[Civ. No. 29931.   Second Dist., Div. Four.   June 2, 1967.]

NORLEN INVESTMENT CO., INC., Plaintiff and Appellant, v. WALTER MINSKOFF et al., Defendants and Respondents.

Albert A. Albeck and Lorin H. Albeck for Plaintiff and Appellant.

Leland, Hoffman & Kalik and Sherman A. Silverman for Defendants and Respondents.

JEFFERSON, J. — On February 25, 1960, plaintiff, a limited partnership, purchased from 747 Hill Building, also a limited partnership, the latter's leasehold interest in an office building known as the 747 Hill Street Building. On the same date, as part of the agreement, plaintiff leased back this interest to 747 Hill Building for a term of approximately 27 years commencing March 1, 1960, and ending December 31, 1986.

The written lease-back agreement, titled "Indenture of Lease," provided for, among other things, the payment by the lessee of rent, taxes, public utility charges and existing "ground rent" to plaintiff. The terms of the lease were complied with by 747 Hill Building until July 20, 1961, when it assigned its interest to the M.L.B. Company, a limited partnership and a defendant herein. (The two individual defendants, Walter and Leo Minskoff, are the general partners of the M.L.B. Company.)

As part of the assignment agreement, the M.L.B. Company assumed, unconditionally, the duties and obligations of the 747 Hill Building under the lease and, as tenants, took possession of the subject premises. It complied with the rental provisions of the lease through May 1962.

In the first and second stated causes of plaintiff's second amended complaint, it is alleged that defendants failed and refused to pay rent due for the months of June through October 1962; that they failed to fulfill additional obligations required under the lease during this period; that, adding the rental arrearages and the other lease obligations, defendants owed plaintiff a total of $38,889.03.

On October 29, 1962, by reason of defendants' defaults in payments, plaintiff caused to be served on defendants a notice of termination of the lease, and, on October 31, 1962, defendants vacated and surrendered possession of the premises to plaintiff.

Defendants filed a motion for summary judgment against plaintiff on the causes of action above enumerated. Points and authorities and declarations in support of and in opposition to the motion were filed. The motion was heard and granted by the court below. Plaintiff appeals from the judgment entered.

The court, in determining that no triable issue of fact was raised in the action and that defendants were entitled to a summary judgment in their favor, concluded that a provision in the lease absolved defendants from all liability for rents, taxes and other obligations.

We have no doubt that the lease is ambiguous, and that extrinsic evidence is admissible to assist the court in interpreting it. Each side presented to the court its own theory of interpretation, and each submitted affidavits. To a large extent the affidavits contain arguments and conclusions. But there is no conflict in the purely factual matters which pertain to the issue presented, and neither side has suggested the existence of any additional evidence which might be produced at a trial. At the time the motion for summary judgment was determined, the trial court was in as good a position as it ever would be to interpret the lease. The summary judgment procedure was therefor appropriate, there being no triable issue of fact.

Inasmuch as the interpretation of the lease is a question of law, it is now the duty of this appellate court to make its own determination upon the record before us. (*Parsons* v. *Bristol Dev. Co.*, 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

The lease provides (in section 3.01 thereof and under the heading ''Rent''), that the tenant agrees to pay a certain monthly rental for the use of the premises, all taxes and assessments on the property, the ''ground rent'' due and all utility bills. It also provides (in section 5.03 under the heading ''General Covenants of Landlord''), that in the event the tenant is not ''in default hereunder,'' the tenant may assign or transfer his interest in the lease upon notice to the landlord and if the assignee unconditionally in writing assumes all of the obligations and liabilities under the lease. It further

provides (in the same section) that the assignee shall not be liable under any of the provisions of the lease subsequent to . any reassignment.

In section 7.01, and under the heading "Default," the lease then provides: "If at any time the Tenant defaults in the payment of any money herein agreed to be paid to Landlord by Tenant, and if such default continues for forty-five (45) days after written notice thereof to the Tenant by the Landlord, or if the Tenant defaults in the performance of any of Tenant's agreements, and if such default continues for one hundred eighty (180) days after written notice thereof from Landlord to Tenant (unless Tenant immediately, upon receipt of such written notice, commences and diligently prosecutes such acts and steps as may be necessary to cure such default, even though the same requires more than one hundred eighty (180) days to complete, which efforts to cure shall stay the running of said one hundred eighty (180) day period,) Landlord, at Landlord's option, immediately may terminate this lease and the leasehold interest created by it, and may enter upon the demised premises and the buildings and improvements thereon, either with or without process of law, and may remove all persons therefrom.

"All buildings and improvements situated on the premises at the time of such default by Tenant and all additions thereto shall remain on the premises and become the absolute property of the Landlord, and no compensation therefor shall be allowed or paid to the Tenant. Without the necessity of any other or further notice or demand whatever, all right, title and interest of Tenant in or to the premises, buildings and improvements shall cease and terminate immediately. *Anything to the contrary in this lease contained notwithstanding, it is expressly agreed and understood that there shall be no personal liability upon any tenant or assignee hereunder, Landlord being limited solely to the recovery of the premises and termination of this lease.*" [Italics added.]

Defendants contend, in support of the trial court's ruling granting their motion for summary judgment, that the last sentence quoted above from section 7.01, releases the tenant from liability for rent and other obligations under the lease. They argue that the sole recourse of the landlord against the tenant for failure to comply with the terms of the lease, was to exercise its right, under the default section above set out, to

retake possession of the premises. They maintain that the "Indenture of Lease" was in effect not a lease at all, but, that the interest created, "could be equated to a determinable fee estate limited by both the usual condition subsequent (e.g. default in the performance of covenants of the grant), and, as in the case of leases, an outside definite term." The tenant, defendants suggest, was in the position of a "buyer" securing his obligation with what amounted to a purchase money mortgage. Such a construction of the document was clearly not intended by its framers.

In the declaration of Ted Harris (the president of plaintiff) filed in opposition to defendants' motion, he states that, to carry out the intention of the parties, pursuant to the negotiations which were conducted prior to the execution of the "Indenture of Lease," that there would be no continuing liability (under the theory of privity of estate) once the interest of the lessee (or his assignee) in the lease terminated, there was carried into the default clause of the lease the provision that if the tenant failed to pay the rentals provided by the terms of the lease, the landlord could terminate the lease, but was limited to recovery of the premises, thus carrying out the idea of no continuing or future liability; the parties did not intend by this provision that the lessee or any assignee was to have the right "to sit in the premises" rent free, collect the rents from subtenants, with the lessor being restricted solely to forcing a termination of the lease without any liability upon the lessee for the accrued obligations; no consideration of any kind was paid by 747 Hill Building (the original lessee) to plaintiff for any release of liability by 747 Hill Building for the use and occupation of the premises; the consideration for the use of the premises was the payment of compensation for such use in accordance with the terms of the Indenture of Lease; the lease contains a reiteration of the principle stated in section 5.03 of no continuing liability of a lessee-assignor after an assignment, in section 8.02 following the "default" provisions; section 8.02 clearly indicates the tenant would be liable on his lease obligations which he had incurred prior to an assignment, since it provides that, "upon such assignment or transfer, the liabilities and other obligations under this lease of the assignor who shall have so assigned shall cease and terminate to the extent not theretofore accrued or incurred."

The exculpatory sentence which the defendants rely upon appears at the end of the default section numbered 7.01

quoted above. This section describes how a defaulting tenant may be removed from the premises. The context supports the view that the exculpation relates only to liability under the lease (it says "hereunder") after the landlord recovers the premises.

This clause must be read in the light of the lessee's dual obligation to the landlord. In *Ellingson* v. *Walsh, O'Connor & Barneson*, 15 Cal.2d 673, 675 [104 P.2d 507], the court explained: "The tenant is liable by operation of law. Where there is a lease the liability of the tenant arising by operation of law is not superseded by the contractual obligation. Both liabilities exist simultaneously. The lease has a dual character; it is a conveyance of an estate for years, and a contract between lessor and lessee. The result is that dual obligations arise,—contractual obligations from the terms of the lease, and obligations under the law from the creation of the tenancy. As it is sometimes expressed, there are dual obligations arising from 'privity of contract' and 'privity of estate'."

The lease here, read as a whole, indicates an intention to make the lessee's contractual obligation coterminous with his liability as an occupant of the premises. Section 5.03 of the lease permits the tenant to assign, if the assignee assumes the obligations of the lease, "provided, however, that nothing contained in this assumption agreement shall cause or make such assignee liable or responsible for the performance of any of the covenants, agreements, terms, provisions, conditions, limitations, rents, obligations or liabilities of this lease, required to be performed subsequent to any reassignment of this lease by such assigned."

Section 8.02 provides that "upon such assignment or transfer, the liabilities and other obligations under this lease of the assignor who shall have so assigned shall cease and terminate to the extent not theretofore accrued or incurred."

We conclude that it is the intent of the lease to limit the contractual obligations to those incurred while the tenant remains on the premises. But that there is no intention that a tenant may escape performance of the obligations which were incurred while he had possession of the premises. Plaintiff is therefore entitled to recover the rental payments (and other lease obligations) which fell due prior to the date the defendants surrendered the premises.

The judgment is reversed with instructions to enter judgment for plaintiff in accordance with this opinion.

Files, P. J., concurred.

KINGSLEY, J.—I dissent.

Looking at all of the facets of the transaction between the parties, including the substantial down payment made by the original tenant ($300,000), and the broad permission to assign the lease, in an indefinite number of assignments and reassignments, to potentially insolvent assignees, I can see no reason not to read the disputed language in section 7.01 as meaning exactly what it says—namely, that neither the original tenant nor any assignee nor reassignee should be required to devote to the building operations any additional personal funds. The parties, by a document obviously drawn with great care by counsel, and executed by experienced businessmen, expresses a clear intent that the tenants and assignees were not to be liable to pay, out of their own pockets, any funds beyond the original down payment.

However, as my colleagues point out, a tenant is obligated under two theories, one contractual under the lease and the other arising out of the estate which he holds. The exculpatory clause herein involved released defendants completely from what would otherwise have been a contractual obligation to continue to pay rent; it did not totally release them from their liability as tenants in possession although, since they were not required to dip into their "personal" funds, it did so in part.

Basic considerations of fair dealing require that defendants, although relieved of personal loss by the clause in question, not be permitted to utilize their own default to make a profit at plaintiff's expense. Defendants are therefore liable to plaintiff for any net income received by them from their operation of the building during the five-month period of default, but not to exceed their contractual liability. How much that may be we do not know on this record. We know that they received some rent from two tenants; they may have received more. We know nothing as to the out-of-pocket costs which they incurred in operating the building during that default period. I would reverse the judgment with directions to take the necessary accounting for the period in question and to give judgment in accordance with the sum so found.