[No. A035353. First Dist., Div. Four. Jan. 21, 1988.]

OAKLAND-ALAMEDA COUNTY COLISEUM, INC., Plaintiff and Respondent, v.
OAKLAND RAIDERS, LTD., et al., Defendants and Appellants.

COUNSEL

H. Christopher Covington, Hardin, Cook, Loper, Engel & Bergez and Amy Trask for Defendants and Appellants.

Peter W. Davis, John McDougall Kern, Joseph P. Mascovich and Crosby, Heafey, Roach & May for Plaintiff and Respondent.

**OPINION**

**CHANNELL, J.**—Defendants Oakland Raiders, Ltd. (aka Los Angeles Raiders, Ltd.) and Al Davis, individually and as a general partner of a limited partnership, appeal from a judgment entered after a motion for summary judgment was granted in favor of plaintiff Oakland-Alameda County Coliseum, Inc.

In this dispute over stadium rental fees, we have determined that the trial court correctly ruled as a matter of law that a rent adjustment clause in a

1966 license agreement was inapplicable during the terms of the 1980 and 1981 license agreements between the parties, and that the Oakland-Alameda County Coliseum, Inc. was entitled to judgment as a matter of law. Accordingly, we affirm.

## I. FACTS[1]

### A. The 1966 Agreement

Throughout the time at issue, the Oakland Raiders, Ltd. (Raiders) was a limited partnership, and Al Davis (Davis) was a general partner of that partnership.

On June 6, 1966, the Raiders entered into a written agreement (1966 agreement) with the Oakland-Alameda County Coliseum, Inc. (Coliseum), in which the Raiders acquired a license to use the Coliseum to play National Football League games. Under that agreement, the Raiders were to pay rental to the Coliseum in the amount of 7½ percent of gross receipts from paid admissions on the first $1.5 million of such receipts each season and 10 percent of the gross receipts above that amount.

Paragraph 8(c) of the 1966 agreement (entitled "Rent Adjustment"), provided, in part: "If, *during the term hereof*, Coliseum, Inc. enters into a License Agreement with the owner of a major baseball league franchise under which rent is less than five per cent (5%) of such licensee's gross receipts from ticket sales . . . , then and in that event Licensee hereunder shall be entitled to a reduction in its rent . . . ."

The Coliseum entered into an agreement with the Oakland Athletics baseball team in 1968, which continued in effect from that date.

Paragraph 4 of the 1966 agreement (entitled "Term"), provided that the 1966 agreement with the Raiders extended to the last day of the 1970 football season. Pursuant to that provision, the Raiders thereafter extended the agreement for three additional periods of three years each, through the end of the 1979 season. By the end of the 1979 football season, however, the Raiders anticipated moving its franchise to Los Angeles.

### B. The 1980 Agreement

Rather than exercise its option to extend for another three-year period, the Raiders, on August 12, 1980, entered into a one-year written agreement

---

[1] Unless otherwise noted, these facts are based on the parties' separate statements of undisputed facts (see Code Civ. Proc., § 437c, subd. (b)), together with the provisions of the 1966, 1980, and 1981 licensing agreements at issue.

with the Coliseum (1980 agreement), in which the Raiders acquired a license to use the Coliseum Stadium to play National Football League games for the 1980 season.

Paragraph 1.2 of the 1980 agreement (entitled "Prior License Agreement"), made reference to the 1966 agreement and subsequent letter agreements, pursuant to which the Raiders used the Coliseum Stadium for its football games from the 1966 season up "through the end of the 1979 season, *at which time the License terminated.*" (Italics added.) A copy of the 1966 agreement was attached to the 1980 agreement as exhibit A and incorporated therein.

In paragraph 2 of the 1980 agreement, the Coliseum granted to the Raiders "the License, concession and privilege to use the stadium of Coliseum on the terms and conditions set forth in the [1966 agreement], as modified and amended by the provisions set out hereafter."

Paragraph 3 of the 1980 agreement (entitled "Term"), expressly deleted the similarly entitled paragraph 4 from the 1966 agreement and, in lieu thereof, provided that "[T]he term of this agreement shall be . . . for the 1980 National Football League season . . . ."

Paragraph 6 of the 1980 agreement provided, in pertinent part, that "The rent for the one-year term shall be in accordance with the provisions of Paragraph 8 of the [1966 agreement] . . . ."

Finally, paragraph 9 of the 1980 agreement provided: "Any conflict or ambiguity contained in any of the provisions of this agreement and Exhibit A as incorporated herein shall be resolved by the provision of this agreement in prevailing over a provision in the License. The wording in the License set forth in Exhibit A shall be modified to the extennt [*sic*] necessary to refer to the present term of this agreement."

On December 7, 1980, during the term of the 1980 agreement, the Raiders played the Dallas Cowboys in the Coliseum Stadium. The gross receipts from paid admissions for that game were $714,663. As the annual gross receipts had already exceeded $1.5 million, the rent due from that game was 10 percent of $714,663, or $71,466.30. The Raiders did not pay any rent for that game. The Coliseum made a written demand for the rent due from that game on March 3, 1981.

## C. *The 1981 Agreement*

By 1981, the Raiders were still unable to complete their move to Los Angeles. In August 1981, the Coliseum and the Raiders entered into anoth-

er one-year agreement, identical to the 1980 agreement, except that the term of the 1981 agreement was expressly defined as being "for the 1981 National Football League season . . . ." Notwithstanding the dispute which had developed between the parties over the final 1980 rental payment, the "rent adjustment" clause found in paragraph 8(c) of the 1966 agreement was not addressed by either party when negotiating the 1981 agreement.

On December 13, 1981, during the term of the 1981 agreement, the Raiders played the Chicago Bears in the Coliseum Stadium. The gross receipts from paid admissions from that game were $729,931. As in 1980, the rent due was 10 percent of that figure, or $72,993.10. The Raiders did not pay any rent for that game. The Coliseum made a written demand for the rent due from that game on June 30, 1982.

The parties agreed that during the terms of the 1980 or 1981 agreements, the Coliseum did not enter into any agreement with the owner of a major league baseball franchise.

D. *Procedural Facts*

In April 1984, the Coliseum filed its "Complaint for Rent Due Under License Agreement," alleging that the Raiders had failed to pay the rent due for the last game played at the Coliseum during the 1980 and 1981 seasons. The Raiders answered, denying liability based on the rent adjustment clause of the 1966 agreement, which they argued had been incorporated by reference into the 1980 and 1981 agreements.

In September 1985, the Coliseum moved for summary judgment, arguing that the "term" of the 1980 and 1981 agreements was defined in each as one National Football League season and that the Raiders' interpretation was contrary to provisions in those agreements. In opposition, the Raiders argued that extrinsic evidence was necessary to interpret the 1980 and 1981 agreements, thereby creating an issue of fact and rendering summary judgment inappropriate.

After a hearing on the motion, the trial court found "that the rent adjustment clause was inapplicable during the terms of the 1980 and 1981 contracts between the Coliseum and the Raiders; and that the amount of rent was capable of being made certain by calculation, so that interest is due on the rental amounts." The court ordered that the motion for summary judgment be granted. A judgment was entered, ordering the Raiders to pay the Coliseum rent for the two games in the amount of $144,456.40, interest to the date of entry of judgment in the amount of $53,008.32, plus costs.

## II. Discussion

### A. Contentions of Parties

On appeal, the Raiders contend that the trial court committed error in concluding, as a matter of law, that the 1980 and 1981 agreements requiring payment of rent were unambiguous, and that the rent adjustment clause appearing in the 1966 agreement was inapplicable. They argue that the 1980 and 1981 agreements were reasonably susceptible to at least two different interpretations, and that based upon the language of those agreements, the circumstances under which they were entered into, and the subsequent conduct of the parties, the Raiders' interpretation of those agreements was the more reasonable one. Accordingly, they argue that extrinsic evidence was necessary to interpret the 1980 and 1981 agreements, that a factual dispute existed, and that the trial court erred in granting summary judgment.

The Coliseum responds that under controlling principles of contract law, the interpretation of the 1980 and 1981 agreements is a question of law; that the language in each precludes application of the rent adjustment clause in the 1966 agreement; that the Raiders' proposed interpretation of the agreements is unreasonable and contrary to the plain meaning of those agreements; and that the Raiders' extrinsic evidence does not support the result they seek. Alternatively, they argue that the summary judgment can also be affirmed on the ground that no rent adjustment would be due even if paragraph 8(c) of the 1966 agreement were applied.

### B. Standard of Review

A motion for summary judgment must be granted if all the affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice may be taken show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (b), (c).) "The aim of the summary judgment procedure is to discover, through the supporting papers, whether the parties possess evidence requiring the weighing procedures of a trial. [Citation.]" (*Lucchesi* v. *Giannini & Uniack* (1984) 158 Cal.App.3d 777, 782 [205 Cal.Rptr. 62].)

In examining the sufficiency of the declarations and other supporting papers filed in connection with the motion, we consider the respondent's papers strictly to determine if they establish its right to judgment by conclusively negating a necessary element of appellants' cause of action, and we construe appellants' declarations liberally to determine if appellants have

established the existence of triable issues of fact. "Doubts as to the propriety of granting the motion are resolved against the moving party. [Citation.]" (*Lucchesi* v. *Giannini & Uniack, supra,* 158 Cal.App.3d at p. 782.)

### C. *Inapplicability of Rent Adjustment Clause*

The specific issue in dispute is the meaning of the word "term" as it was used in paragraph 8(c), the rent adjustment clause, of the 1966 agreement and as it was used in both the 1980 and 1981 agreements.

Under paragraph 8(c) of the 1966 agreement, the Raiders would be entitled to a reduction in rent if, "during the term hereof," the Coliseum entered into a license with a baseball franchise under which the rent would be less than 5 percent. Paragraph 4 of the 1966 agreement provides that the "term" of the agreement extended to and including the last day of the 1970 season. "Thereafter the [Raiders] shall have the options to extend this License for five consecutive firm periods of three years each."

The Raiders exercised the option to extend the agreement three times, through the end of the 1979 season. Meanwhile, the Coliseum entered into an agreement with the Oakland Athletics baseball franchise in 1968 but, during the 11-year period through and including 1979, the Raiders paid their rent in a timely manner and never claimed, nor were they given, a rent adjustment under that clause.

The Coliseum's position is that the 1966 agreement was declared "terminated" in both the 1980 and 1981 agreements. Moreover, while the 1966 agreement was then incorporated by reference into those later agreements, paragraph 3 in each expressly deleted the language of paragraph 4 from the earlier agreement and, in lieu thereof, provided that "the *term* of this agreement shall be" for the National Football League seasons of 1980 and 1981, respectively. (Italics added.)

The Raiders offered and the trial court admitted extrinsic evidence, in the form of letters and a declaration by their counsel, which the Raiders claimed showed a practical construction of the agreements and the Raiders' intent when entering into the agreements.

The Coliseum counters that while the admissibility of, and the inferences which could be drawn from, this evidence could be disputed, the evidence itself is uncontroverted. Under these circumstances, interpretation of the agreements is solely a question of law, determinable on a motion for summary judgment. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861,

865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Norlen Investment Co.* v. *Minskoff* (1967) 251 Cal.App.2d 534, 536 [59 Cal.Rptr. 484].)

First, it is fundamental that a contract must be so interpreted as to give effect to the intent of the parties at the time the contract was entered into, and that whenever possible, that intention is to be ascertained from the writing alone. (Civ. Code, §§ 1636, 1639.)

Looking to the language of the 1980 and 1981 agreements, paragraph 3 of each agreement expressly defines "term" to be a single football season. To the extent that paragraph 8(c) of the 1966 agreement was incorporated into those agreements, it only applied if, "during the term hereof," the Coliseum entered into the described agreement with a major league baseball franchise. Although an agreement was entered into with the Oakland Athletics baseball team in 1968 when the original agreement was operative, it was undisputed between the parties that during the terms of the 1980 and 1981 agreements, the Coliseum did not enter into any agreement with the owner of a major league baseball franchise. It follows logically, as the trial court stated in its order granting the motion for summary judgment, "that the rent adjustment clause was inapplicable during the terms of the 1980 and 1981 contracts between the Coliseum and the Raiders . . . ."

The Raiders argued that the word "term" was not intended to have a single, precise definition throughout each of the agreements. Paragraph 9 in each of the later agreements, however, clearly stated that in the event of any conflict or ambiguity in the various provisions, the wording in the 1966 agreement was modified to the extent necessary "to refer to the present term of this agreement." Thus, looking to the writings alone, the use of the word "term" in the 1980 and 1981 agreements would preclude the continued applicability of the rent adjustment clause unless a new baseball agreement was entered into during one of those seasons.

To avoid that conclusion, the Raiders offered extrinsic evidence, consisting of letters between the parties which the Raiders claimed showed a practical construction of the agreements, together with a declaration by their counsel regarding the undisclosed intent of the Raiders at the time the 1980 and 1981 agreements were negotiated.

■ In determining whether extrinsic evidence is admissible to explain the meaning of a written instrument, the test is not whether the instrument appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442

P.2d 641, 40 A.L.R.3d 1373].) Although extrinsic evidence is not admissible to alter the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. (*Id.,* at p. 39.) If, after preliminary consideration of this evidence, the court decides that the language of a contract is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of those meanings is admissible. (*Id.,* at pp. 39-40.)

■ Looking first to the declaration by the Raiders' counsel during the negotiation of the 1980 and 1981 agreements, Attorney Barrie Engel states, in a conclusionary manner, that "It was the intent of the Raiders that an agreement be reached which would provide for the extension of the term of the Raiders' Stadium License Agreement dated June 6, 1966, and except as specifically modified by paragraph 6 of the 1980 and 1981 agreements, otherwise on the same terms and conditions as provided therein."

This portion of the declaration was contrary to the face of the 1980 and 1981 agreements, which included several other amendments to and deletions from the 1966 agreement in addition to the one cited. Moreover, the attorney in his declaration frankly conceded that "The potential applicability of the 'rent adjustment' clause, found at paragraph 8 (c) of the 1966 License, was not addressed during the negotiations by either the Raiders or the Coliseum."

■ These statements by counsel of unexpressed intent cannot be used to interpret a contract. "A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention." (*Blumenfeld* v. *R. H. Macy & Co.* (1979) 92 Cal.App.3d 38, 46 [154 Cal.Rptr. 652].)

■ The Raiders also cite an exchange of letters during the 1980 season which they contend evidenced the intent of the parties regarding applicability of the rent adjustment clause. These related to a request by the Raiders for information about rentals being paid by the Oakland Athletics during the 1975-1980 baseball seasons, which would have been relevant towards applying the rental adjustment clause. Although the Coliseum eventually provided the information to the Raiders, they stated that they did so "not because of any contractual obligation, but purely as an accommodation" to the Raiders.

In a February 1981 letter to the Raiders, the Coliseum made very clear its understanding that "The 1980 License Agreement applies only to the 1980 football season. A strict interpretation of the License Agreement would indicate that there has been no baseball license agreement entered into

during that period and, therefore, 8(c) would be inapplicable to the 1980 agreement."

Notwithstanding this background, the 1981 agreement was entered into in August 1981, in essentially the same terms as the 1980 agreement. As previously indicated, the applicability of the rent adjustment clause was not addressed during the negotiation of that contract.

Thus, the Raiders' extrinsic evidence does not support the interpretation of the contract which they seek. As the 1980 and 1981 agreements are not reasonably susceptible to the interpretation they seek, the extrinsic evidence was not admissible to add to, detract from, or vary the terms of the agreements. (See *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at p. 37.)

In view of our conclusion, we need not reach the Coliseum's alternative argument that the summary judgment can be affirmed on the ground that no rent adjustment would be due even if paragraph 8(c) of the 1966 agreement were applied.

### III.  CONCLUSION

The judgment is affirmed.

Anderson, P. J., and Sabraw, J., concurred.