[No. A050704. First Dist., Div. Four. June 14, 1991.]

SINAI MEMORIAL CHAPEL et al., Plaintiffs and Respondents, v.
RIVA DUDLER et al., Defendants and Appellants.

**COUNSEL**

Richard A. Canatella for Defendants and Appellants.

Farella, Braun & Martel, Jerome I. Braun, Steven R. Lowenthal and Tiela M. Chalmers for Plaintiffs and Respondents.

**OPINION**

**PERLEY, J.**—The instant appeal arises out of a dispute between defendants and appellants Riva Dudler et al. (appellant) and plaintiffs and respondents Sinai Memorial Chapel et al. (respondent) over whether appellant properly placed a monument containing a carved-in facial likeness of her deceased husband on a grave in a cemetery controlled by respondent.

After filing a complaint for declaratory relief respondent successfully moved for a summary judgment authorizing it to remove the monument on the grounds that the monument was prohibited by respondent's rules and regulations and by the contract between the parties. Appellant has filed an appeal from the summary judgment and from the denial of her motions for a new trial, to vacate and enter a different judgment, and for leave to file a second amended cross-complaint.

On appeal she contends: (1) triable issues of fact exist regarding the contract; (2) triable issues of fact exist regarding whether respondent's rules and regulations are constitutional or enforceable; and (3) the trial court erred by denying leave to file a second amended complaint. We affirm.

## I. *Summary of Undisputed Facts*

Each of the parties is a member of the Jewish religion. The Jewish religion has its own laws, regulations, and system of jurisprudence. A forum for the resolution of disputes, or court, is known as "Beth Din"—literally "House of Judgment." Sources of Jewish law include the legal portions of the "Torah" which is the first five books of the Bible and legal writings from all succeeding ages including the present.

Under Jewish law, as under all religious law, cemetery ground is hallowed. Thus, before real property can become a Jewish cemetery it must be sanctified in a ceremony conducted by the religious leaders or rabbis of the community. Further, among the first institutions established by a community is the cemetery and the "Chevra Kadisha"—literally "Holy Society"—which attends to funerals, burials, and interments. Jewish law invests the cemetery authorities with the absolute control of practices within the confines of the cemetery gates. Through a board of directors (Board of Directors) or other governing body each cemetery has the right and authority to establish and maintain its own rules and regulations based upon local custom, tradition and practice, and in consultation with the rabbinic authority or authorities to whom it turns for guidance.

For approximately the last 80 years respondent Sinai Memorial Chapel has been the Chevra Kadisha for San Francisco. It also operates Eternal Home Cemetery, which is one of four Jewish cemeteries in the Colma area, and one of twelve in the Bay Area. At present it is governed by a Board of Directors. Moreover, Sinai is a nonprofit religious corporation governed by the provisions of Corporations Code section 9110 et al. governing nonprofit religious corporations. Appellant and her family are recent immigrants from the Soviet Union.

Since at least 1972, respondent's rules and regulations have forbidden tombstones bearing any "likeness to a human face, animal or other figure or object, whether by photograph, drawing, etching, engraving or otherwise . . . ." Jewish religious symbols and small cameo photographs are allowed. The rules were enacted and reenacted by the Board of Directors of respondent after consultation with the appropriate religious authorities. These rules are based on Jewish law. It is a custom or tradition of Jews from the Soviet Union to have the image of the deceased engraved on the monument.

At all material times respondent advertised its services in the local Jewish newspaper as follows: "In the hallowed tradition of our faith . . . [¶] a dignified setting with reverence for [¶] customs and observances in strict accord [¶] with family wishes."

It appears that no one attempted to install a monument with a picture at Eternal Home Cemetery until 1984. Thereafter several such monuments were placed on graves over the objections and protests of respondent. However, until the present case, it appears that respondent did not attempt to physically remove the monuments or institute litigation to do so. On October 14, 1986, October 13, 1987, and December 8, 1987, respondent's Board of Directors discussed the issue of Soviet Jews and pictures on monuments. The proceedings, which are summarized in the record, were fair and impartial.

On September 27, 1988, Grigory Dudler died. His widow, appellant, does not read, speak or write English. On September 28, 1988, appellant's son Jack Dudler and son-in-law, Gennady Vilsker, went to respondent to arrange for a Jewish funeral. There is no allegation that either man cannot comprehend English. Because of his father's death Jack Dudler was "emotionally and physically exhausted, bewildered and distraught."

Gene B. Kaufman, the executive director of Sinai Memorial Chapel and its Eternal Home Cemetery, met with the two men. Kaufman explained the terms of Sinai's standard contract for funeral and burial services at Eternal Home. He specifically explained the rule prohibiting etched pictures on monuments. In addition Kaufman directed their attention to the rule. Jack Dudler and Vilasker indicated they understood the prohibition and would abide by it. Jack Dudler signed the contract and a copy of the rules.

After the funeral and burial at Eternal Home, the Dudler family contracted for a gravestone. On or about July 6, 1989, appellant submitted a drawing of a monument for approval. The proposal did not contain a likeness of decedent. Because of a previous incident with another family Kaufman

sought further assurances from the Dudlers that the final monument would not contain a picture. He telephoned them and asked for a meeting with a representative to further discuss the matter. Kaufman was told that Vilasker would represent the Dudlers. At their meeting on August 21, 1989, Vilasker agreed orally and in writing that there would be no portrait on the monument.

In September 1989, the monument with an approved Star of David was installed. However, without informing anyone in her family, or respondents, Riva Dudler arranged to have the star replaced with a carved likeness of the decedent's face, approximately one month later.

On October 30, 1989, November 9, 1989, and November 30, 1989, respondent wrote letters to appellant requesting a meeting to discuss the unauthorized monument. The only response was a phone call that the Dudler family had no intention of removing the portrait. The picture remains on the monument as of the date of this opinion.

## II.  *Contract*

In the summary judgment the trial court ruled that appellant breached an enforceable contract to refrain from placing a portrait on the tombstone. Appellant's several contentions relating to such ruling will be separately stated below. Each contention lacks merit.

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. . . . First, we identify the issues framed by the pleadings. . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. Counteraffidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted.)

■ An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." (*O'Neil* v. *Dake* (1985) 169 Cal.App.3d 1038, 1044-1045 [215 Cal.Rptr. 732].) Further, an issue of fact is not raised by "cryptic, broadly phrased, and conclusory assertions" (*Van Komen* v. *Montgomery Ward & Co.* (C.D.Cal. 1986) 638 F.Supp. 739, 741), or mere possibilities (*Jones* v. *Ortho Pharma-*

*ceutical Corp.* (1985) 163 Cal.App.3d 396, 402-403 [209 Cal.Rptr. 456]). "Thus, while the court in determining a motion for summary judgment does not 'try' the case, the court is bound to consider the competency of the evidence presented." (*Hayman* v. *Block* (1986) 176 Cal.App.3d 629, 643 [222 Cal.Rptr. 293].)

In summation, " 'The aim of the summary judgment procedure is to discover, through the supporting papers, whether the parties possess evidence requiring the weighing procedures of a trial. [Citation.]' " (*Oakland-Alameda County Coliseum, Inc.* v. *Oakland Raiders, Ltd.* (1988) 197 Cal.App.3d 1049, 1055 [243 Cal.Rptr. 300].)

## A.

■ Appellant contends that the contracts signed by Jack Dudler and Gennady Vilasker are not binding agreements because Riva Dudler did not sign them, Health and Safety Code section 7100 grants her the right to control the disposition of the remains of her husband, and her declaration shows the absence of any intention on her part to authorize anyone else to exercise that right.

Health and Safety Code section 7100 provides: "The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in, and the duty of interment and the liability for the reasonable cost of interment of such remains devolves upon the following in the order named:

"(a) The surviving spouse.

"(b) The surviving child or children of the decedent."

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"This section shall be administered and construed to the end that such expressed instructions of any person shall be faithfully and promptly performed."

Health and Safety Code section 7101 provides in pertinent part: "This chapter does not prohibit any relative or friend of a decedent from assuming the duty or paying the expense of interment or the funeral services."

Health and Safety Code section 7110 provides: "Any person signing any authorization for the interment of any remains warrants the truthfulness of any fact set forth in the authorization, the identity of the person whose

remains are sought to be interred, and his authority to order interment. He is personally liable for all damage occasioned by or resulting from breach of such warranty."

Health and Safety Code section 7111 provides: "A cemetery authority may make an interment of any remains upon the receipt of a written authorization of a person representing himself to be any of the following: .

"(a) The surviving spouse.

"(b) A surviving child.

".  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"A cemetery authority is not liable for cremating or making an interment pursuant to such authorization, unless it has actual notice that such representation is untrue."

Giving meaning to every provision of the statutory scheme (See *United Public Employees* v. *Public Employment Relations Bd.* (1989) 213 Cal.App.3d 1119, 1127 [262 Cal.Rptr. 158]) we conclude that appellant is bound by the contracts between respondent and the son and son-in-law of the decedent. The two men acted as if they were the chosen representatives of the deceased's family.

Further, in her deposition Riva Dudler agrees that she "let" her son and son-in-law "handle" the arrangements with respondent. Thus, they were authorized by her to enter into the contracts with respondent. Any statement to the contrary in the declaration submitted by Riva Dudler is rejected by us. (*State Farm Mut. Auto. Ins. Co.* v. *Eastman* (1984) 158 Cal.App.3d 562, 573 [204 Cal.Rptr. 827].)

B.

■ Appellant appears to contend there is a triable issue regarding the existence of an "implied contract" to allow the picture on the monument. The basis for such contract is the advertisement promising "reverence for customs and observances in strict accord with family wishes," her observation of other gravestones with pictures, and respondent's knowledge of appellant's "burial custom and tradition."

The advertisement is too general to create a contract (See *Carlil* v. *Carbolic Smoke Ball Co.* (1893) 1 Q.B. 256). The other two factors relied on by appellant are the very reasons respondent thoroughly advised her repre-

sentatives of its policy against portraits. Therefore, respondent has effectively counteracted to prevent any implied promise arising from them. Respondent has always attempted to prevent the installation of portraits. It will not be estopped from enforcing its rules and contract in court because some other persons managed to evade its diligence.

## C.

■ Appellant contends there are triable issues whether the contract resulted from duress, mutual mistake, or deceit. The basis of the duress claim is that Jack Dudler signed the contract while he was very upset due to the recent death of his father. However, the grief arising from the death of a close relative does not vitiate contracts between cemeteries and the family of the decedent. (*In re Terra* (1952) 111 Cal.App.2d 452, 462 [244 P.2d 921].) None of the documents submitted indicates that respondent acted under a mistake and a unilateral mistake of fact is not a defense to a contract action. (*Blumenfeld* v. *R.H. Macy & Co.* (1979) 92 Cal.App.3d 38, 46 [154 Cal.Rptr. 652].)

In support of the deceit claim appellant alleges that she was deceived by the advertisement and that respondent "harbored, but concealed, an invidiously discriminatory animus against Soviet Jews." The advertisement was too general in terms to mislead her as charged (*Carlil* v. *Carbolic Smoke Ball Co.*, *supra*, 1 Q.B. 256).

Riva Dudler's declaration avers: "Since I have been involved with Sinai—in their efforts to force me to remove my husband's gravestone—it has become apparent to me that Mr. Kaufman harbors much ill will toward Soviet Jews. I know this from the letters he sent my family—everyone of which has been read to me in Russian." Jack Dudler's declaration contains almost identical language. Gennady Vilasker's declaration avers that respondent exhibited its "ill will" by forcing him to sign the no-portrait contract on August 21, 1989.

These declarations do not contain evidence, as defined above. At most they are conclusory charges. Moreover, they assert that respondent's policy of no portraits results from ill will toward Soviets and the proof of bias is that respondent is attempting to enforce this policy. The letters referred to are respondent's demands that the portrait be removed.

Whatever evidence is found in the declarations in no way contradicts the ample evidence that respondent, "does not discriminate against any Jew on the basis of heritage, nationality or ancestry." It has contributed money and provided services to Soviet Jewish immigrants. The minutes of Sinai's board

meetings demonstrate that the organization has valiantly attempted to resolve the conflict in Jewish law which is at the heart of the instant appeal.

### III. *Constitutional Rights*

■ Appellant contends there is a triable issue of fact whether respondent's no-portrait rule violates her right to freedom of religion, to freedom of expression, and to privacy (Cal. Const., art. I, § 1). These contentions lack merit.

The record indicates that a legitimate dispute exists over whether Jewish law forbids portraits on monuments. Respondent is duly authorized to interpret Jewish law regarding burials. " 'The Fathers of the Constitution were not unaware of the varied . . . views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views. Man's relation to his God was made no concern of the State. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views.' " (*McNair* v. *Worldwide Church of God* (1987) 197 Cal.App.3d 363, 377 [242 Cal.Rptr. 823], quoting *United States* v. *Ballard* (1944) 322 U.S. 78, 87 [88 L.Ed. 1148, 1154, 64 S.Ct. 882].)

Thus, in the absence of fraud or collusion, the interpretation of Jewish law by an accredited body, such as respondent, is accepted in litigation before the secular courts as conclusive, even if the decision affects the civil rights of appellant and even if the decision is "arbitrary." (*Serbian Orthodox Diocese* v. *Milivojevich* (1976) 426 U.S. 696, 712-713 [49 L.Ed.2d 151, 164-165, 96 S.Ct. 2372]; *Thomas* v. *Review Bd., Ind. Empl. Sec. Div.* (1981) 450 U.S. 707, 715-716 [67 L.Ed.2d 624, 665, 101 S.Ct. 1425]; *Presbyterian Church* v. *Hull Church* (1969) 393 U.S. 440, 449 [21 L.Ed.2d 658, 665, 89 S.Ct. 601]; *Burgess* v. *Rock Creek Baptist Church* (D.D.C. 1990) 734 F.Supp. 30, 31-32; *Grunwald* v. *Bornfreund* (E.D.N.Y. 1988) 696 F.Supp. 838, 840; *Snyder* v. *Evangelical Orthodox Church* (1989) 216 Cal.App.3d 297, 307-308 [264 Cal.Rptr. 640]; *Higgins* v. *Maher* (1989) 210 Cal.App.3d 1168, 1176 [258 Cal.Rptr. 757].) Our statement of the applicable law in no way means that we believe respondent's interpretation is arbitrary.

No showing is made that respondent seized or exercised the power to legislate over monuments in a fraudulent or collusive manner. Health and Safety Code section 7980, which regulates religious cemeteries, provides in pertinent part: "The officers, representatives or agents of the church or religious society shall be the sole judge of the requirements of the rules,

regulations and discipline of such religious denomination, society or church."

Health and Safety Code section 8133 provides: "The authorities having jurisdiction and control of cemeteries may make and enforce general rules and regulations, and appoint sextons or other officers to enforce obedience to the rules and regulations, with such powers and duties regarding the cemetery as may be necessary."

These appear to be the only code sections regulating respondent since Health and Safety Code section 8250 provides that the sections governing private cemeteries do not cover religious cemeteries, section 8250.5 excludes them from the sections governing public cemeteries and no other sections mention religious cemeteries.

The prohibition of portraits was a nonfraudulent, reasonable exercise of the authority granted by the statutes to administer the cemetery property for the general good, and to make choices which are against the wishes of some individuals, such as appellant. (*Zimmer* v. *Congregation Beth Israel* (1928) 203 Cal. 203 [263 P. 232] [size of monument can be regulated]; *In re Terra, supra* [no-cremation rule is valid]; *Koehl* v. *Resor* (E.D.Va. 1969) 296 F.Supp 558, affd. 417 F.2d 1338 [national cemetery can proscribe types of demonstrations at funerals]; *Frank* v. *Clover Leaf Park Cemetery Ass'n.* (1959) 29 N.J. 193 [148 A.2d 488] [style of monument can be regulated]; *Pine Crest Memorial Park* v. *Burton* (Ark. 1958) 312 S.W.2d 919 [same]; *Abell* v. *Proprietors of Green Mount Cemetery* (1947) 189 Md. 363 [56 A.2d 24] [sculptured animals can be barred]; *Johnson* v. *Cedar Memorial Park Cemetery Ass'n.* (1943) 233 Iowa 427 [9 N.W.2d 385] [style of monument can be regulated].)

### IV. *Civil Rights Statute*

Appellant contends there is a triable issue of fact whether respondent's no-portrait rule violates the Unruh Civil Rights Act (Civ. Code, § 51). This contention lacks merit. As is stated more fully above, appellant has not presented any *evidence* that respondent discriminated against her because she was of Soviet origin.

### V. *Amendment*

■ Appellant contends: "The superior court erred by denying leave to file a second amended cross-complaint because the amendment was essential to avoid forfeiture of a cause of action to enjoin removal of the gravestone." This contention lacks merit because appellant has stated all the essential

causes of action in the extant pleadings. Further, the record of the hearings before the superior court indicates that respondent has agreed not to attempt to remove the gravestone until the entire appeal process has been exhausted.

## VI.  *Disposition*

The judgment is affirmed. Costs to respondent.

Anderson, P. J., and Poché, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 21, 1991.