Filed 1/13/15  Thorsnes Bartolotta McGuire v. Pointe San Diego Residential Community CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THORSNES BARTOLOTTA MCGUIRE, LLP, | D064907 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00038631-CU-PA-CTL) |
| POINTE SAN DIEGO RESIDENTIAL COMMUNITY, LP et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

McKenna Long & Aldridge and Charles A. Bird for Defendants and Appellants.

Law Offices of Martin N. Buchanan and Martin N. Buchanan for Plaintiff and Respondent.

Pointe San Diego Residential Community, LP, Gosnell Builders Corporation of California, and Pointe SDMU, LP (collectively Pointe) hired the law firm of Thorsnes Bartolotta McGuire, LLP (TBM) on a contingency basis to assist in prosecuting a legal

malpractice action. After the malpractice case settled, the parties disputed how much Pointe owed TBM pursuant to their fee agreement. The parties attended binding arbitration to resolve the fee dispute, and the arbitrators ruled in favor of TBM. Pointe filed a petition to vacate the arbitration award, which was denied by the trial court.

On appeal, Pointe contends the arbitrators exceeded their authority by denying Pointe access to TBM's time records shortly before the arbitration commenced. Pointe also contends the arbitrators denied Pointe a fair hearing by refusing to hear material evidence and insisting on a one-day arbitration hearing. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties' Agreement*

In 2004, Pointe and its CEO, Robert Gosnell (Gosnell), filed a legal malpractice action against the law firm currently known as Procopio. Attorney Michael Vivoli (Vivoli) initially represented Pointe in that action. In May 2011, Vivoli contacted TBM partner Vincent J. Bartolotta, Jr. (Bartolotta) about engaging TBM as Pointe's co-counsel. Prior to retaining TBM, Pointe and Procopio had participated in two unsuccessful mediations with retired Justice Howard B. Wiener: one in August 2008 and another in September 2011. In December 2011, Pointe and TBM began negotiating the terms of a retainer agreement.

At a meeting on February 28, 2012, Gosnell and Bartolotta reached an agreement. They orally agreed TBM would receive a five percent contingency fee for the mediation and a 20 percent fee if the mediation was unsuccessful. The increase would occur 10 days after "the mediation."

2

The parties subsequently executed a legal services contract (contract) to memorialize the terms of their agreement. The contract stated TBM's contingency fee would be calculated as follows: "Five percent (5%) of all amounts recovered by way of compromise up until ten days after the mediation. After that time, twenty percent (20%) of all amounts recovered." Primary to the issue at hand, the contract does not define what it meant by the words "the mediation." The contract provided for binding arbitration of any dispute by Judicate West.

On May 2, 2012, Vivoli and TBM represented Pointe in mediation with Justice Wiener. Justice Wiener recommended Gosnell not attend based on his prior experience mediating the case. The mediation was unsuccessful, and the case did *not* settle within the next 10 days.

Thereafter, TBM prepared for trial. TBM's preparation included drafting an opening statement; conducting expert depositions; creating direct and cross-examination outlines; preparing voir dire questions; drafting in limine motions; and organizing roughly 3,000 exhibits. Justice Wiener stayed involved with settlement negotiations during this time. On August 16, 2012, four days before trial was set to begin, the malpractice action settled for $12.2 million. After Pointe received the settlement, TBM requested its 20 percent contingency fee, or roughly $2.4 million. Pointe disputed the amount owed.

B. *Arbitration Proceedings*

Though the contract provided for arbitration by Judicate West, Pointe requested arbitration with the San Diego County Bar Association's Fee Arbitration Committee (Committee). TBM agreed and filed on September 24, 2012 a request for arbitration of a

3

fee dispute with the San Diego County Bar Association (SDCBA). After the request was made, Pointe claims it received an information packet from the Committee entitled "What Can the Mandatory Fee Arbitration Program Do for Me?"[1] The packet allegedly contained various questions and answers, one of which supposedly guaranteed Pointe "a copy of [its] entire file in the attorney's possession[,] including, but not limited to: (a) all time sheets or time records relating to the services performed by the attorney in the matter in which the fee dispute arose . . . ." Eventually, the parties signed an arbitration agreement providing for binding arbitration "in accordance with [SDCBA] Rules."

On December 3, 2012, the Committee notified the parties of the arbitrators assigned to their case. On January 8, 2013, lead arbitrator Dale Larabee (Larabee) informed the parties that the matter was scheduled for February 19, 2013. Larabee told each side it would have 2.5 hours to present its case. No party then objected to the time limit.

On February 11, 2013, attorney R. Keith McKellogg (McKellogg) sent a letter to the arbitrators and TBM informing them that he would represent Pointe in the arbitration. In the letter, McKellogg requested a subpoena to compel production of TBM time records from February 26, 2012 through execution of the settlement agreement in August 2012, pursuant to rule 10.6 of the SDCBA Fee Arbitration and Mediation Local Rules (SDCBA Local Rules). He also asked the arbitrators to consider extending the arbitration to a second day.

---

[1] Pointe acknowledges "[t]he brochure was not included in the evidence." We note Pointe did not rely on the information packet in either the arbitration proceedings or its initial petition to vacate the award. The quoted material is also not in the record before us.

4

In a reply email to the parties, Larabee told McKellogg the arbitrators scheduled the arbitration for one day and intended to complete it on that day. In a follow-up letter dated February 13, 2013, McKellogg acknowledged the arbitrators' decision to complete the arbitration in one day. McKellogg also sent the arbitrators several follow-up letters prior to the arbitration regarding his subpoena request. On February 18, 2013, arbitrator Jonathan Montag told the parties McKellogg's subpoena request would be considered on the day of arbitration.

The arbitration was held on February 19, 2013. At the outset, Larabee stated the key question was whether TBM was entitled to a five or 20 percent contingency fee, which in turn depended on the meaning of the words "the mediation" in the contract. In response to McKellogg's subpoena request for TBM's time records, Larabee explained they were irrelevant because TBM was entitled to a percentage of the settlement (i.e., either five or 20 percent). Larabee also indicated McKellogg's request for a subpoena was "late." At the end of the arbitration, Larabee reiterated the panel's initial opinion as to TBM's time records: "We . . . have decided we don't want any time records from the Bartolotta firm." The record shows no party sought additional time to present its case before the close of the arbitration.

On February 27, 2013, the arbitrators issued their decision. They ruled TBM was entitled to a 20 percent contingency fee, or roughly $2,440,000. The panel wrote: "The May 2, 2012 mediation was 'the mediation' referred to in the parties' contract. The mediation did not result in settlement. More than 10 days passed before the case settled. TBM is entitled to its fee 20% of all amounts collected."

5

C. *Superior Court Proceedings*

Following the panel's decision in TBM's favor, TBM filed a petition to confirm the arbitration award, and Pointe filed a petition to vacate the award. The trial court granted TBM's petition to confirm the award and denied Pointe's petition to vacate it. Final judgment was entered in TBM's favor for $2,562,855.13, the award amount plus interest and costs. Pointe timely appealed.

DISCUSSION

I.

Pointe first contends the arbitrators exceeded their authority by denying them access to TBM's time records. We disagree.

A.

California favors finality in arbitration proceedings for public policy reasons. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Arbitration offers "'a speedy and relatively inexpensive means of dispute resolution.'" (*Ibid.*) "Ensuring arbitral finality thus requires that judicial intervention in the arbitration process be minimized." (*Id.* at p. 10.) "[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11.) In addition, "discovery orders in arbitration [are] subject to the same limited judicial review as other arbitration orders." (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1090.) Thus, even "'an error of law apparent on the face of the [discovery order] that causes substantial injustice does not provide grounds for judicial review.'" (*Id.* at p. 1091.)

Courts recognize an arbitrator may make a mistake. However, this is acceptable for two reasons. "First, by voluntarily submitting to arbitration, the parties have agreed to

6

bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 11.) Second, any such risk is reduced because the law provides for "judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Id.* at p. 12.) Code of Civil Procedure section 1286.2, subdivision (a) provides grounds for vacating an arbitration award as "an exception to the general rule precluding judicial review." (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1196.)

Whether an arbitrator exceeded his or her authority is a question of law we review de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9; *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 888.)

B.

As a preliminary note, we observe that Pointe's argument in its petition to vacate the arbitration award in the trial court was premised on Code of Civil Procedure section 1286.2, subdivision (a)(5).[2] There, Pointe argued the arbitrators' refusal to hear material evidence warranted its petition to vacate. As TBM correctly points out, Pointe has chosen to forego this argument on appeal, instead contending the arbitrators exceeded their authority under subdivision (a)(4) of this same statute by not issuing a subpoena for

---

[2]     Subdivision (a)(5) requires a court to vacate an award where the "rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

7

TBM's time records. Nonetheless, as we explain below, subdivision (a)(4) of Code of Civil Procedure section 1286.2 also does not provide Pointe relief.

Pointe argues the arbitrators exceeded their authority by denying them access to TBM's time records. Code of Civil Procedure section 1286.2, subdivision (a)(4) requires an arbitration award be vacated when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

"'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.'" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185.) "An arbitrator exceeds his [or her] powers where he [or she] acts without statutory or contractual authority." (*Hoso Foods, Inc. v. Columbus Club, Inc.*, *supra*, 190 Cal.App.4th at p. 890.) However, "[a]n arbitrator ordinarily has broad discretion with respect to the procedures and law governing the arbitration." (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177.) Subdivision (a)(4) of Code of Civil Procedure section 1286.2 "does not supply the court with a broad warrant to vacate awards the court disagrees with or believes are erroneous." (*Gueyffier v. Ann Summers, Ltd.*, *supra*, at p. 1184.)

Here, the arbitrators did not exceed their powers. The arbitrators' denial of Pointe's request for TBM's time records was well within its authority. The contract provided for binding arbitration in which the "arbitrator will resolve any discovery disputes." Later, at Pointe's request, TBM filed a request for binding arbitration with the Committee. The parties signed an arbitration agreement that provided for binding arbitration "in accordance with [the Committee's] rules." SDCBA Local Rules, rule 10.6

8

provides: "The sole or presiding arbitrator, upon written application and for good cause shown, *may* issue subpoenas to compel the attendance of witnesses or the production of *relevant documents*." (Italics added.) This rule does not guarantee Pointe a right to subpoena TBM's records but rather grants arbitrators discretion on whether to issue subpoenas for relevant material. SDCBA Local Rules, rule 14.4 further provides in part that the "parties shall be permitted to present testimony and documentary evidence, *which is relevant to the issues to be decided*." (Italics added.) "The sole or presiding arbitrator shall preside at the hearing and shall rule on the admission and exclusion of evidence . . . ." (*Ibid.*)

Here, lead arbitrator Larabee ruled that TBM's time records were not relevant to the proceedings. As lead arbitrator, we conclude it was within his and the Committee's authority to decide whether to admit or exclude evidence, including the time records. In light of the issue in the arbitration, namely whether TBM was entitled to five or 20 percent of the settlement, we discern no abuse of discretion by the Committee in refusing to admit the TBM billing records. But even assuming arguendo the Committee had erroneously refused Pointe's subpoena request, it did not exceed its powers. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 164 ["Even had the arbitrator's ruling [quashing discovery request subpoenas] been incorrect . . . it certainly was not because he exceeded his power"].)

SDCBA Local Rules, rule 2.0 states that the local rules were developed and adopted to comply with sections 6200 through 6206 of the California Business and Professions Code. Pursuant to section 6200, subdivision (g)(3) of the Business and Professions Code, "[i]n the conduct of arbitrations under this article the arbitrator or

9

arbitrators *may* . . . [i]ssue subpoenas for . . . the production of books, papers, and documents pertaining to the proceeding."  (Italics added.)  Again, this provision in our view supports the conclusion that the arbitrators had the discretionary authority to rule on Pointe's subpoena request for the TBM billing records.

As noted *ante*, Pointe claims an information package received from the Committee guaranteed it access to TBM's time records.  However, as Pointe itself concedes, the information "was not included in the evidence" and thus is not part of the record on appeal.  Pointe nonetheless directs us to two different websites with similar content, though neither contains the material cited in its opening brief.  As TBM correctly notes, Pointe did not reference or rely on the information package in either the arbitration proceedings or its initial motion to vacate the award, and, therefore, Pointe has forfeited the issue.  (See *Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 31 ["Failure to raise [a] claim before the arbitrator . . . waives the claim for any future judicial review"].)

In sum, the arbitrators acted well within their discretion and authority in denying Pointe's subpoena request.  This authority arose from the parties' contract executed in February 2012, the parties' arbitration agreement executed in September 2012, SDCBA Local Rules, rule 10.6, and Business and Professions Code section 6200, subdivision (g). Accordingly, on this record we conclude the arbitrators did not exceed their powers.

II

Pointe next contends it was deprived of a fair hearing for multiple reasons, each of which we will address in turn.

"[A]rbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal."  (*Hoso Foods, Inc. v. Columbus Club, Inc.*, *supra*, 190

10

Cal.App.4th at p. 888.) "Arbitration procedures violate the common law right to a fair hearing 'only in the clearest of cases, i.e., when the applicable procedures essentially preclude the possibility of a fair hearing.'" (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177.)

Pointe argues the "client files are the repository of powerful evidence for interpreting the parties' fee agreement because they document the course of performance before any dispute arose." While this may be true, the files would not speak to the parties' intent *at the time the fee agreement was signed* in February 2012. In this regard, "it is fundamental that a contract must be so interpreted as to give effect to the intent of the parties *at the time the contract was entered into*." (*Oakland-Alameda County Coliseum, Inc. v. Oakland Raiders, Ltd.* (1988) 197 Cal.App.3d 1049, 1057, italics added; see Civ. Code, § 1636 ["A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting"].)

Similarly, Pointe argues that the "materials in the files could be evidentiary admissions" that "the mediation" was never meant to refer to a "single scheduled session" but rather an ongoing event, complete "only when [the parties] mutually agreed the mediation was complete." However, as we have concluded, the arbitrators acted within their discretion to deny Pointe's subpoena request. Based on the information before them, the arbitrators deemed the files irrelevant, which they were entitled to do.

Pointe contends the lead arbitrator's "insistence on a one-day hearing demonstrated prejudging the issues and constrained the panel from giving Pointe a fair hearing." We reject this argument. In an email sent to both parties on January 14, 2013, lead arbitrator Larabee stated he would "allow each side 2.5 hours to present their case." In a letter to

11

Larabee dated February 11, 2013, McKellogg opined the arbitration "may require more than a single day" and requested the arbitrators "consider providing for a second day of arbitration . . . if deemed necessary." In a reply email, Larabee told McKellogg that "[w]e have scheduled one day and we intend to complete the arbitration in one day." McKellogg acknowledged the arbitrators' decision in a letter dated February 13, 2013: "I understand your decision regarding completion of the arbitration in one day, and we will tailor The Pointe presentation accordingly." Pointe therefore knew about and agreed to abide by the one-day time frame set by the arbitrators. Pointe also did not request more time or object on timing grounds before the case was submitted at arbitration. Thus, Pointe has failed to show how the arbitrators' decision to give each side equal time to present its case constitutes "prejudging the issues."

Pointe also argues "the arbitrators violated the public policy supporting the Mandatory Fee Arbitration Act [Bus. & Prof. Code, § 6200 et seq.] by denying a client access to relevant, forum-promised evidence." Yet, as we already noted, the information package cited by Pointe was not addressed during the arbitration or in its initial petition to vacate the award. It is also not in the record before us. Moreover, Business and Professions Code section 6200, subdivision (g)(3) provides that "[i]n the conduct of arbitrations under this article the arbitrator or arbitrators *may* . . . [i]ssue subpoenas for . . . the production of books, papers, and documents pertaining to the proceeding." (Italics added.) This provision provides arbitrators with discretionary authority to issue subpoenas. Pointe has not shown how the arbitrators' proper exercise of this authority contravenes public policy.

12

DISPOSITION

The judgment is affirmed.  TBM to recover its costs of appeal.

                                          _____

                                                             BENKE, Acting P. J.

WE CONCUR:


_____

               HUFFMAN, J.


_____

               McDONALD, J.