Filed 11/5/21  Ukraine Relief v. Gurzhiy CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| UKRAINE RELIEF et al., | C088778 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2018-00234969-CU-DF-GDS) |
| v. | |
| RUSLAN GURZHIY, | |
| Defendant and Appellant. | |

This case lies at the intersection of the right to freedom of the press and the right of private individuals to remain free of unjust damage to their reputations.  The First Amendment protects accurate journalism even when serious charges are made against individuals.  (*Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 268; *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 731.)  "In a society which takes seriously the principle that government rests upon the consent of the governed, freedom of the press

1

must be the most cherished tenet." (*Edwards v. National Audubon Soc.* (2d Cir. 1977) 556 F.2d 113, 115.) Even so, freedom of the press does not undermine an "individual's right to be free of unjust damage to his [or her] reputation . . . ." (*Ibid.*) Thus, " '[a] reasonable degree of protection for a private individual's reputation is essential to our system of ordered liberty.' " (*Khawar*, at p. 273, quoting *Brown*, at p. 743.)

In 2017 and 2018, Ruslan Gurzhiy published three articles on his online platform, titled The Slavic Sacramento. Gurzhiy's articles described how Stephan, Roman, Vitaliy, and Vladimir Skots[1] allegedly engaged in a series of self-enriching criminal activities that they disguised through their humanitarian aid organizations. The Skots family members and entities who were targeted by Gurzhiy's articles sued him.[2] The complaint alleged that Gurzhiy's three articles contained a total of 112 defamatory statements. In response, Gurzhiy filed an anti-SLAPP motion to strike the complaint.[3] The trial court granted the anti-SLAPP motion as to 82 allegedly defamatory statements and denied the motion as to the remaining 30 allegedly defamatory statements.

---

[1] For ease of reference, we refer to members of the Skots family by their first names. We refer to Stephan, Roman, Vitaliy, and Vladimir Skots collectively as the Skots brothers.

[2] In addition to the Skots brothers, plaintiffs are Ukraine Relief, Great Commission Ministry International (Great Commission), USKO Shipping, Inc. (USKO Shipping), USKO Express, Inc., and Anna Skots.

[3] "Anti-SLAPP" refers to the procedural vehicle provided by Code of Civil Procedure section 425.16 to strike legal actions intended as a "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

On appeal, Gurzhiy contends (1) the trial court properly found that the anti-SLAPP statute applies to plaintiffs' claims,[4] (2) Civil Code section 48a, subdivision (a),[5] bars plaintiffs' claims except for special damages because they never demanded retraction, (3) plaintiffs did not meet their burden to show the falsity of Gurzhiy's statements, (4) "most of the statements are protected as subjective statements based on disclosed facts,"[6] (5) seven of the alleged defamatory statements are protected by the litigation privilege and as true reports of public records, (6) four of Gurzhiy's allegedly defamatory statements are not actually defamatory, (7) two of the statements are not " 'of and concerning' " any of the plaintiffs, and (8) the trial court erred in overruling Gurzhiy's evidentiary objections. We have also received and considered a brief by amici curiae, the Reporters Committee for Freedom of the Press and additional media organizations.[7]

---

[4] Gurzhiy's first contention is not actually a claim of error. Thus, his argument that the anti-SLAPP statute applies to plaintiffs' claims is unnecessary. Indeed, the respondents' brief filed by plaintiffs confirms that there is no argument that the anti-SLAPP statute is inapplicable. Instead, plaintiffs argue that they have met their burden under Code of Civil Procedure section 425.16 to show that their defamation claims have at least minimal merit. Accordingly, we pass on this "claim" and do not discuss it further in this opinion.

[5] Undesignated statutory references are to the Civil Code.

[6] In the Factual and Procedural History section, below, we catalog the disposition of the allegedly defamatory statements in plaintiffs' complaint. For allegedly defamatory statements for which the trial court overruled the anti-SLAPP motion, we quote the pertinent statements from Gurzhiy's articles. Due to the numerosity of statements at issue for each of Gurzhiy's arguments on appeal, we identify the statements relating to each contention in the Discussion section, below.

[7] Amici curiae are comprised of the Reporters Committee for Freedom of the Press, California News Publishers Association, CalMatters, The Center for Investigative Reporting, Embarcadero Media, Investigative Reporting Workshop at American University, The Media Institute, MPA - The Association of Magazine Media, The News

We reject arguments by Gurzhiy and amici curiae that the retraction statute applies to bar plaintiffs' claims except for special damages. The record does not show that The Slavic Sacramento constitutes a daily or weekly publication within the meaning of section 48a. As to allegedly defamatory statements for which plaintiffs tendered evidence of falsity, we conclude that the trial court did not err. As to Gurzhiy's argument that most of the statements at issue in this case are subjective statements not capable of being proven true or false, we conclude that statements 33.i, 33.j, 33.x, and 33.jjj are statements of subjective opinion not capable of being proven or disproven. The remainder of the statements challenged by Gurzhiy are not statements of subjective opinion. We are not persuaded by Gurzhiy's challenges to statements he believes should have been dismissed as true reports of public records. We reject Gurzhiy's argument that two enumerated statements are not " 'of and concerning' " any of the plaintiffs. Finally, we conclude that Gurzhiy has not demonstrated prejudice for his claims of error regarding his evidentiary objections. In sum, we reverse the trial court's order on Gurzhiy's anti-SLAPP motion insofar as the court denied the motion as to statements 33.i, 33.j, 33.x, and 33.jjj. As to the remainder of the trial court's order, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *Gurzhiy Publishes The Slavic Sacramento*

Gurzhiy is the publisher of The Slavic Sacramento, an online publication addressing matters of public concern to the Slavic community. As pertinent to this case, Gurzhiy published articles on June 15, 2017, October 1, 2017, and February 25, 2018.[8]

---

Leaders Association, Northern California Chapter of the Society of Professional Journalists, The Sacramento Bee, Society of Environmental Journalists, Society of Professional Journalists, and Tully Center for Free Speech.

[8] Even though the articles were published online in a form that presumably displayed clearly readable text, the appellate record reprints the articles in a manner that is, in parts, nearly unreadable due to extremely small font size and/or blurry reproduction. Despite the legibility challenges, we have reviewed the entirety of the three articles at

In June 2018, plaintiffs sued Gurzhiy for defamation as to 112 statements made in these articles. Plaintiffs' complaint also alleged claims for intentional and negligent infliction of emotional distress. In September 2018, Gurzhiy responded by filing an anti-SLAPP motion as to all allegedly defamatory statements. Plaintiffs opposed the motion.

The trial court granted the anti-SLAPP motion as to 82 of the 112 allegedly defamatory statements. As to the remaining 30 statements, the trial court found that plaintiffs had established their claims of defamation had at least minimal merit. For the sake of our review, we catalog the numerated statements in the complaint – quoting the statements for which the trial court rejected the anti-SLAPP motion and noting statements that were stricken by the trial court.

### First Article: "Ukraine Relief: Where do the Donations REALLY go?"

The first set of allegedly defamatory statements relates to an article published by Gurzhiy in June 15, 2017, that he titled, "Ukraine Relief: Where do the Donations REALLY go?" Gurzhiy captured the scope and tone of the article with the following synopsis: " 'Religious mafia' from California sells humanitarian aid in Ukraine. The Bethany Slavic Missionary Church of Sacramento helps extremists from the Right Sector. USKO Shipping employees are caught with hundreds of thousands of dollars in unaccounted money. Roman Skots and Anna Skots are sued in the US District court for money laundering and flee from California to Ukraine. Millions of dollars of donated money are wasted and lost in Malawi, Mexico, and Ukraine." Plaintiffs alleged this article contained 66 defamatory statements:[9]

---

issue in this case even though we have had to guess about certain particularly illegible words and phrases.

[9] The parties seem agree on this set of statements – even though different in minor details from the original complaint. Statement numbers relate to the paragraph and subparagraph in the complaint in which they were originally alleged. We do not recite the statements for which the trial court granted the anti-SLAPP motion because respondents have not challenged them by filing a cross-appeal.

Statement 33.a:     "USKO Shipping employees are caught with hundreds of thousands of dollars in unaccounted money."

Statement 33.b:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 33.c:     "Millions of dollars of donated money [to Ukraine Relief/Great Commission] are wasted and lost in Malawi, Mexico, and Ukraine." (Original bracketed insertion.)

Statement 33.d:     "According to the fund management, in those three years, there is no verifiable accounting of how much money was donated to this so-called public fund, nor are there any verifiable donations sent to the people of Ukraine."

Statement 33.e:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.f:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.g:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.h:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.i:     "Disastrous and suspicious projects of the missionary businessman Stephan Skots."

Statement 33.j:     "Let's take a closer look at the business and church projects of a founder of Ukraine Relief – Stephan Skots.  Let's talk about his past and present 'Christian' projects, including some suspicious and totally disastrous ones."

Statement 33.k:     "According to our sources, [Stephan] Skots used his mission to send containers with humanitarian aid [to the] Ukraine – where the goods were sold in thrift stores owned by his brother Roman Skots a pastor and a business." (First bracketed insertion in original, second bracketed insertion added.)

6

Statement 33.*l*:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 33.m:    "It is quite possible that Ukraine Relief still charges American churches and charities $6500 to ship every container with humanitarian aid, despite using the government subsidies. That's double dipping!"

Statement 33.n:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.o:    "Stolen or wasted - $1.5 million in Malawi."

Statement 33.p:    "I want every parishioner of Bethany Slavic Missionary Church (as well as others) to ask what happened to one and a half million dollars that was stolen in Malawi, where Stephan Skots and the members of Great Commission went 10 years ago."

Statement 33.q:    "[T]he wells promised to Malawian children were never built."

Statement 33.r:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.s:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.t:    "According to some information, up to $1.5 million has disappeared in the Well Water Ministry project."

Statement 33.u:    "Witnesses have said that the missionaries who left the country hid stacks of cash under their clothes."

Statement 33.v:    "Two of them were even arrested by the local authorities for trying to smuggle out a large amount of money and had to spend some time in a local jail."

Statement 33.w:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.x:    "The next suspicious project under the guidance of Stephan Skots was the highly unfortunate affair in Mexico called International Ministries Salidad, started in 2014 by Bethany Church members."

Statement 33.y:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.z:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.aa:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.bb:    "It is well known that the Skots family made their money in transportation deals in the United States and around the world; but, their initial capital, according to our sources, was made by selling humanitarian aid and organizing missionary projects — where, as far as I know, no one has ever performed any audits or accounting checks."

Statement 33.cc:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.dd:    "We can see that the Skots' name jumps from one missionary project to the next, and each project either fails to be completed or irresponsibly wastes the public's money. Wherever the Skots brothers show up, hundreds of thousands of dollars suddenly disappear without a trace. As soon as the money runs out, they seamlessly switch to the next affair."

Statement 33.ee:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.ff:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.gg:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by the statutory and/or constitutional privileges.

Statement 33.hh:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, was barred by statutory and/or constitutional privileges, and was barred for lack of defamatory meaning.

Statement 33.ii: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 33.jj: "According to information from open sources, the annual income of USKO Shipping does not exceed $200,000, which is far less than the amounts of money mentioned in the criminal case against the [Roman] Skots." (Original bracketed insertion.)

Statement 33.kk: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, was barred by statutory and/or constitutional privileges, and was barred for lack of defamatory meaning.

Statement 33.*ll*: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, and was barred by the statutory and/or constitutional privileges.

Statement 33.mm: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges and was barred for lack of defamatory meaning.

Statement 33.nn: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 33.oo: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.pp: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.qq: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.rr: "Meanwhile, the authorities told Slavic Sacramento that an arrest warrant was issued for Anna Skots and Roman Skots, but just prior to that they fled the country."

Statement 33.ss:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, and was barred for lack of defamatory meaning.

Statement 33.tt:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.uu:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.vv:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 33.ww:     "As was witnessed by Slavic Sacramento reporters, hired shopkeepers sell humanitarian aid in the stores owned by the Skots family."

Statement 33.xx:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges and was barred for lack of defamatory meaning.

Statement 33.yy:     "The Ukrainian press reports a much smaller quantity of delivered aid as well — the only news source that did a single mention of the humanitarian aid containers was the Ukrainian newspaper Observer, which has connections to the fund [Ukraine Relief]!" (Original bracketed insertion.)

Statement 33.zz:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.aaa:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.bbb:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, was barred by statutory and/or constitutional privileges, and was barred for lack of defamatory meaning.

Statement 33.ccc:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.ddd: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.eee: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.fff: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred for lack of defamatory meaning.

Statement 33.ggg: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.hhh: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 33.iii: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.jjj: "Meetings with crooked Ukrainian politicians who are quickly losing popularity in their home country, flying all over the world at the expense of the credulous believers, pretentious interviews on TV, lavish dinners at restaurants — these are the finishing touches to the picture of 'serving God and the Ukrainian people' by the Skots family. Could it be that this is the exact purpose of the charities such as Ukraine Relief and Great Commission?"

Statement 33.kkk: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, was barred by statutory and/or constitutional privileges, and was barred for lack of defamatory meaning.

Statement 33.*lll*: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.mmm: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 33.nnn:   The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

*Second Article: "American Raider Pastors Sell Humanitarian Aid in Ukraine"*

On October 1, 2017, Gurzhiy published an article titled, "American Raider Pastors Sell Humanitarian Aid in Ukraine." The introductory paragraph summarizes the article by stating: "Pastor Roman Skots, who escaped justice in the U.S., unlawfully took land from his compatriots in Ukraine, forged documents, and blackmailed and bribed public officials while other members of his family sold humanitarian aid from the West. The administration of American and Ukrainian Protestant churches encouraged and covered up the fugitive's shameless deeds." Regarding this article, plaintiffs alleged that 37 statements were defamatory:

Statement 35.a:   "Pastor Roman Skots, who escaped justice in the U.S., unlawfully took land from his compatriots in Ukraine, forged documents, and blackmailed and bribed public officials while other members of his family sold humanitarian aid from the West."

Statement 35.b:   "The administration of American and Ukrainian Protestant churches encouraged and covered up the fugitive's shameless deeds."

Statement 35.c:   The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 35.d:   The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 35.e:   The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.f:   "In this article, we will talk about the sale of humanitarian aid by the family of pastor Roman Skots, who fled the U.S. to his native Ukraine a few years ago and who closely cooperates with the top leadership of the Bethany Slavic Missionary Church in Sacramento, where his 5 brothers still live."

Statement 35.g: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.h: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.i: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.j: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.k: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.*l*: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges and was barred for lack of defamatory meaning.

Statement 35.m: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges and was barred for lack of defamatory meaning.

Statement 35.n: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.o: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 35.p: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred for lack of defamatory meaning.

Statement 35.q: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.r:     "We visited all four outlets owned by members of the Skots family and found evidence of selling humanitarian aid (Please watch this video)."

Statement 35.s:     "Interestingly, along with second-hand clothing from Europe and the U.S., the store sells exactly the same 'rice from India' for which the Californian Skots [B]rothers collect money in American churches — $25 for a 5kg bag."  (Original bracketed insertion.)

Statement 35.t:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.u:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.v:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.w:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.x:     "But, as we see, instead of actually helping orphans and war victims, the donations from the West make a profit for the fugitive swindlers."

Statement 35.y:     "Ukrainian-American Pastor [Roman] Raids and Intimidates Christians."  (Original bracketed insertion.)

Statement 35.z:     The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.aa:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.bb:    "This is what happened.  In 2009, Roman and his family escaped from the U.S., fleeing from the FBI's persecution for laundering hundreds of thousands of dollars through USKO Shipping."

Statement 35.cc:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 35.dd:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 35.ee:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 35.ff:    ". . . Roman's own people are suspected of setting fire to those houses to clear the land for the church construction." (Original ellipses.)

Statement 35.gg:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 35.hh:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.ii:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 35.jj:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 35.kk:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges, and was barred for lack of defamatory meaning.

### *Third Article: "How the Pentecostal Mafia From the U.S. Operates in Ukraine"*

On February 25, 2018, Gurzhiy published an article titled, "How the Pentecostal Mafia from the U.S. Operates in Ukraine." The article's synopsis states: "Americans

15

have no understanding of what is actually happening in Ukraine. Take a look at what's going on in the political arena, on the streets of Kiev, Lvov, and Donbas: politicians are being attacked in broad daylight, journalists are being blown up, the authorities shamelessly and unceremoniously rob their own people, one hand of Poroshenko pretends to be occupied with reforms while the other ruthlessly drops shells on the country's enemies. While the government is at war, the President is on vacation in the Maldives, betraying the ideals that the 'Heavenly Hundred' heroes died for at Maidan."
As to this article, the plaintiffs alleged there were nine defamatory statements – all of which were stricken by the trial court on the anti-SLAPP motion as follows:

Statement 37.a: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 37.b: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false, was barred by statutory and/or constitutional privileges, and that the statement was not "of and concerning" any of the plaintiffs.

Statement 37.c: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 37.d: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 37.e: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was barred by statutory and/or constitutional privileges.

Statement 37.f: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

Statement 37.g: The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

16

Statement 37.h:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false and was barred by statutory and/or constitutional privileges.

Statement 37.i:    The trial court granted the anti-SLAPP motion as to this statement on grounds that it was a subjective statement not capable of being proven true or false.

In ruling on the anti-SLAPP motion, the trial court rejected Gurzhiy's argument that plaintiffs may claim only special damages because they did not first demand a retraction within the meaning of section 48a. The trial court dismissed plaintiffs' false light, libel per se, and libel per quod claims as redundant to the defamation claims. Similarly, the trial court dismissed plaintiffs' claims for intentional and negligent infliction of emotional distress as duplicative of the defamation claims.

From the trial court's order on the anti-SLAPP motion, Gurzhiy timely filed a notice of appeal.

## DISCUSSION

### I
### *Anti-SLAPP*

Code of Civil Procedure section 425.16 provides, in pertinent part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) Regarding section 425.16, the California Supreme Court has explained that " 'section 425.16 sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . , which are brought to challenge the exercise of constitutionally protected free speech rights.' (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 196.) A cause of action arising from a person's act

17

in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  'The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*).)

When presented with an anti-SLAPP motion, a trial court must engage in a two-step analysis.  First, the trial court considers whether a defendant has established that the gravamen of the complaint challenges activity protected by Code of Civil Procedure section 425.16.  (*Monster Energy, supra,* 7 Cal.5th at p. 788.)  If the defendant establishes that the complaint relates to protected activity, the second step requires the trial court to consider whether the plaintiff can satisfy the burden of showing that there is a probability of success on the merits of the causes of action in the complaint.  (*Ibid.*)

The California Supreme Court has described " 'this second step as a "summary-judgment-like procedure." [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  "[C]laims with the requisite minimal merit may proceed." ' (*Baral* [*v. Schnitt* (2016)] 1 Cal.5th [376,] 384-385, fn. omitted.) . . .  As to the second step, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Monster Energy, supra,* 7 Cal.5th at p. 788, quoting *San Diegans for Open*

18

*Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 95.)

We apply the independent standard of review to the trial court's ruling on the anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) And, as part of our review, " '[w]e consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." ([Code Civ. Proc.,] § 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " (*Id.* at p. 326.)

## II
### *Retraction Statute*

Gurzhiy argues that the trial court erred in determining that section 48a does not apply to limit plaintiffs to special damages in this case. Amici curiae concur and suggest that Gurzhiy's declaration alone should have sufficed to establish that The Slavic Sacramento was a daily or weekly publication within the meaning of section 48a. We are not persuaded.

### A.
### *Publication Frequency of The Slavic Sacramento*

In his anti-SLAPP motion, Gurzhiy asserted that plaintiffs are limited to claiming only special damages because they did not first demand retraction. To establish that The Slavic Sacramento was a daily or weekly publication under section 48a, Gurzhiy declared: "*The Slavic Sacramento* has been publishing news on a weekly basis (between two and five articles each week) since 2014." Gurzhiy's declaration, however, does not list a publication schedule for The Slavic Sacramento. Instead, the only dates of publication mentioned in Gurzhiy's declaration refer to the three articles at issue in this case.

The trial court rejected Gurzhiy's attempt to invoke section 48a. The trial court noted that "plaintiffs did not demand retraction as required by California's retraction statute Civil Code [section] 48a." However, the trial court rejected Gurzhiy's assertion that The Slavic Sacramento constituted a daily or weekly publication, explaining: "Despite [Gurzhiy's] general conclusory declaration regarding the nature of his publication, the record does not otherwise contain sufficient evidence from which the Court may determine that *The Slavic Sacramento* contains news on matters of public concern and that it publishes such news at least once a week."

**B.**
### *Section 48a*

Section 48a, subdivision (a), provides in pertinent part that, "[i]n any action for damages for the publication of a libel in a *daily or weekly news publication*, . . . plaintiff shall only recover special damages unless a correction is demanded and is not published or broadcast, as provided in this section." (Italics added.) Subdivision (d) of section 48a states that, " 'Daily or weekly news publication' means a publication, either in print or electronic form, that contains news on matters of public concern and that publishes at least once a week." (§ 48a, subd. (d)(5).) Regarding section 48a, the Legislature has declared its intent "to ensure that weekly and online publications are afforded the same protection under Section 48a of the Civil Code as is afforded to a daily newspaper to the extent that the weekly and online publications perform the same news-disseminating function as a daily newspaper." (Stats. 2015, ch. 343, § 1.) Equally importantly for purposes of this case, is the declaration that "[i]t is not the intent of the Legislature that Section 48a of the Civil Code should apply to periodicals that publish at longer than weekly intervals, *nor is it the intent of the Legislature that Section 48a of the Civil Code should apply to casual postings on a social networking Internet Web site, chat room, electronic bulletin board, discussion group, online forum, or other related Internet Web site*." (Stats. 2015, ch. 343, § 1, italics added.)

20

Gurzhiy's invocation of section 48a's limitation on damages required him to demonstrate that The Slavic Sacramento published at least once per week. " '[A]lthough [Code of Civil Procedure] section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense. (See, e.g., *Mann* [*v. Quality Old Time Service, Inc.* (2004)] 120 Cal.App.4th [90,] 109 [noting, in the context of a [section] 425.16 analysis, that defendants had failed to carry their burden of establishing their allegedly defamatory statements were protected under the conditional privilege of Civil Code [section] 47, [subdivision] c].)' " (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 477, quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 676.) Thus, Gurzhiy bore the burden to establish at a minimum a weekly publication schedule.

## C.
### *Gurzhiy Did Not Meet His Burden*

Gurzhiy's declaration that the articles at issue this case were published between June 15, 2017, and February 25, 2018, means that there was a 36-week span between the publications. Establishing The Slavic Sacramento as a weekly publication required a showing that it published at least 36 times during the relevant time period. (§ 48a, subd. (d)(5).) Gurzhiy, however, did not provide any dates of publication for The Slavic Sacramento aside from the three articles alleged by plaintiffs to be defamatory.

Gurzhiy does not argue that his conclusory declaration of weekly publication alone suffices under section 48a, subdivision (d)(5). At oral argument, however, counsel for Gurzhiy asserted that his declaration alone could suffice to establish that The Slavic Sacramento published on at least a weekly basis. For failure to make this argument in the opening brief, the argument is not timely. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 [holding the issues not raised in the opening brief are

21

deemed abandoned].)  In any event, the argument is not persuasive.  Indeed, Gurzhiy's opening brief itself provides the reasoning where he argues that plaintiffs' conclusory declarations did not constitute admissible evidence for the summary-judgment-like procedure of Code of Civil Procedure section 425.16.  Specifically, Gurzhiy argues that "[t]o meet their burden, Plaintiffs were required to provide the ultimate facts that support their claims.  See *Sinai Memorial Chapel v. Dudler*, 231 Cal.App.3d 190, 196-197 (1991) (broadly phrased conclusory allegations inadmissible); *Baron v. Mare*, 47 Cal.App.3d 304, 311 (1975) (*rejecting declaration that was 'mostly conclusionary rather than factual'*).  Yet, they assert only that donations to Ukraine Relief stopped, and USKO Shipping lost $40,000, due to the Articles.  They do not provide any underlying facts to support these claims *which, therefore, are inadmissible as a matter of law*."  (Italics added.)

In *Sinai Memorial Chapel v. Dudler*, the First District reviewed the sufficiency of evidence in the context of a motion for summary judgment and concluded:  "An issue of fact can only be created by a conflict of evidence.  It is not created by 'speculation, conjecture, imagination or guess work.'  (*O'Neil v. Dake* (1985) 169 Cal.App.3d 1038, 1044-1045.)  Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' (*Van Komen v. Montgomery Ward & Co*. (C.D. Cal. 1986) 638 F.Supp. 739, 741), or mere possibilities (*Jones v. Ortho Pharmaceutical Corp*. (1985) 163 Cal.App.3d 396, 402-403)."  (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197.)  This reasoning also applies under the summary-judgment-like procedure for Code of Civil Procedure section 425.16.  (Cf. *Monster Energy, supra,* 7 Cal.5th at p. 788.)

Here, Gurzhiy's declaration offers nothing more than the conclusory statement that he published The Slavic Sacramento "on a weekly basis (between two and five articles each week) since 2014."  Gurzhiy describes no publication schedule, provides no list of issues, and gives no way to determine the truth of his statement.  In short, his

22

statement offers only a conclusion that did not meet his burden of proof. (See *Sinai Memorial Chapel v. Dudler*, *supra*, 231 Cal.App.3d at pp. 196-197.) For the same reason, we also reject the argument of amici curiae. Gurzhiy's mere assertion of weekly publication, without more, did not suffice to show that The Slavic Sacramento was a weekly publication under section 48a.

On appeal, Gurzhiy attempts to establish the weekly nature of publication by pointing to a reprint of his June 15, 2017, article in which the article seems to point to 12 other previously published articles. The illegible nature of the reprint challenges us with discerning whether the 12 cited articles were published by The Slavic Sacramento. Even assuming that the 12 articles were published by The Slavic Sacramento, these are more than two dozen short of the requisite number for establishing weekly publication under section 48a.

We are also not persuaded by Gurzhiy's assertion that his attorney established The Slavic Sacramento to be a weekly publication by argument in the trial court. It is well established that the "[a]rgument of counsel is not evidence." (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1173.) Whatever Gurzhiy's attorney may have argued during the hearing on the anti-SLAPP motion, it did not constitute evidence that satisfied section 48a.

Finally, Gurzhiy argues the importance of the articles published by The Slavic Sacramento. To this end, he notes the participation of The Slavic Sacramento in press conferences along with national and international coverage. The importance and reach of a publication, however, is not a criterion established by section 48a for limitation of claims to special damages. The claimed importance and reach of articles in The Slavic Sacramento cannot substitute for evidence showing it was published at least weekly during the relevant time period. (§ 48a, subd. (d)(5).) The trial court did not err in rejecting Gurzhiy's assertion that section 48a limited plaintiffs' claims to special

23

damages in the absence of their demand for a retraction of the allegedly defamatory articles.

## III
### *Evidence Regarding Falsity of Statements*

Gurzhiy argues that the trial court erred in denying the anti-SLAPP motion as to 30 allegedly defamatory statements for which plaintiffs have not met their "heavy burden" to prove falsity.[10] We disagree.

## A.
### *Partial Denial of the Anti-SLAPP Motion*

The trial court's order on the anti-SLAPP motion noted that plaintiffs bore "the burden of proving the purported falsity of each of the 112 separate statements on which their claims for defamation are based . . . ." Although the trial court struck 82 claims, the court found for the remaining 30 claims that plaintiffs' "[c]omplaint is legally sufficient as to the Libel claim and supported by a sufficient *prima facie* showing of facts as to falsity to sustain a favorable judgment if the evidence submitted by the plaintiff[s] is credited." We examine the 30 claims below.

## B.
### *Falsity of Statements*

When a defendant who has filed an anti-SLAPP motion has shown that the complaint relates to protected activity, the burden shift to plaintiffs to show a probability of prevailing on their claims. (*Monster Energy, supra*, 7 Cal.5th at p. 788.) "In determining whether a plaintiff has made the required showing in opposition to a special motion to strike, ' "[w]e do not weigh credibility, nor do we evaluate the weight of the

---

**10** Gurzhiy appears to accept that plaintiffs are private figures for purpose of defamation analysis. Thus, plaintiffs did not need to show that the allegedly defamatory statements were made with actual malice. (*Khawar v. Globe Internat., Inc., supra*, 19 Cal.4th at p. 274; see also *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 867.) Accordingly, we do not consider the issue of actual malice.

evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." ' (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.) Thus, in order to defeat a special motion to strike, a plaintiff need only present sufficient evidence showing 'a case of "minimal merit." ' (*Ibid.*)" (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 155 (*GetFugu*).) As noted by the California Supreme Court, "[i]t bears emphasis that a plaintiff's burden at the second anti-SLAPP step is a low one, requiring only a showing that a cause of action has at least 'minimal merit within the meaning of the anti-SLAPP statute.' " (*Monster Energy*, *supra*, 7 Cal.5th at p. 793, quoting *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 825 (*Oasis West*).) Thus, we reject Gurzhiy's assertion that plaintiffs bore a "heavy burden" to establish the falsity of their statements in order to defeat the anti-SLAPP motion.

Nonetheless, in the second step of the analysis plaintiffs did bear a burden to show falsity. This is because the falsity of the allegedly defamatory statements is a key element of a defamation cause of action. Section 45 provides that "[l]ibel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Thus, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369 (*Wong*).) "To ascertain whether the statements in question are provably false factual assertions, courts consider the totality of the circumstances. (*Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1049.) Whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." (*GetFugu, supra*, 220 Cal.App.4th at p. 156.)

25

## *Evidence Regarding Falsity*

As to statements 33.c, 33.d, 33.i, 33.j., 33.k, 33.o, 33.p, 33.q, 33.t, 33.u, 33.v, 33.x, and 33.dd, Gurzhiy argues that plaintiffs "did not offer a shred of financial information other than vague statements about spending — no accounting; no evidence at all regarding the total amount donated to the charities; and inherently ambiguous assertions about the work purportedly done, and money allegedly spent, by the charities." (Italics & boldface omitted.) Gurzhiy argues that plaintiffs did not "carry their burden of proving the falsity of the Statements that Stephan engaged in 'suspicious' and 'disastrous' humanitarian projects (Statement Nos. 33.i., 33.j., 33.k., 33.x.)." We do not need to consider statements 33.i, 33.j, and 33.x because – as we explain in part IV, below – these statements of subjective opinion are not capable of being proven or disproven. As to the remainder of the statements for which Gurzhiy argues that plaintiffs did not show falsity, we reject Gurzhiy's argument.

Statements 33.c, 33.d, 33.k, 33.o, 33.p, 33.q, 33.t, 33.u, 33.v, and 33.dd pertain to Gurzhiy's claims that plaintiffs accepted millions of dollars in charitable donations to be used in Malawi, Mexico, and Ukraine but which were stolen or wasted by plaintiffs. Gurzhiy claimed some of the thefts were as brazen as simply hiding stacks of cash under their clothing. Some of the missionaries for the projects overseen by the plaintiffs were arrested and spent time in a local jail. Putting these claims into the context of the entirety of Gurzhiy's article gives the unmistakable sense that he intended to portray plaintiffs as criminals who stole money donated by churchgoers and then repeated their criminal scheme.

To support plaintiffs' assertions of falsity for these statements, plaintiffs submitted declarations and evidence that included the following: Edward Andriychuk's declaration that he has been a board member and volunteer for Great Commission since it was started in 2009. He stated that since inception, Great Commission has spent approximately

26

$200,000 to build churches and water wells in Malawi, spends approximately $20,000 annually on its work in Ukraine, and organizes youth camps to build houses for local populations in Mexico. Andriychuk concluded, "I am not aware of any money that was wasted or lost by Great Commission charity on any project at any point."

Stephan submitted a similar declaration in which he explained that he is president of Great Commission and was "not aware of any money that was wasted or lost by Great Commission charity on any project at any point." He also declared that Great Commission spent approximately $200,000 to build churches and wells in Malawi, and that it spends approximately $20,000 each year in Ukraine. Stephan explained, "Great Commission financially supports various missionaries on a regular basis, helps build churches, and put on programs to help the poor and disabled with medical, food and clothes assistance and supplies in Ukraine, Russia, Spain, Malawi, India, and Mexico." He also noted that Great Commission sent at least 25 tons of rice to Ukraine over the course of several years. Stephan submitted shipping manifests for the rice. He also submitted photographs showing water wells that had been built in Malawi. Stephan declared, "I have never been involved with the sale of humanitarian aid – either in the U.S. or abroad . . . ."

In assessing plaintiffs' showing, we do not review from the vantage point of a trier of fact charged with determining whether the evidence is sufficient to prove defamation at trial. Instead, we determine only whether plaintiffs' showing met the "low" burden of demonstrating " 'minimal merit' " to their assertions of falsity for the pertinent statements published by Gurzhiy. (*Monster Energy*, *supra*, 7 Cal.5th at p. 793; *Oasis West, supra,* 51 Cal.4th at p. 825.) Collectively, plaintiffs could establish the falsity of Gurzhiy's statements if a trier of fact accepted their declarations and evidence as true. Plaintiffs' evidence supported their categorical claims that they had not stolen or wasted money donated to their charitable organizations for projects abroad.

We reject Gurzhiy's attempt to undermine the plaintiffs' evidence by contesting their assertions of falsity with his own evidence. "In determining whether a plaintiff has made the required showing in opposition to a special motion to strike, ' "[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." ' " (*GetFugu*, *supra*, 220 Cal.App.4th at p. 155, quoting *Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.) The *GetFugu* court held that "declarations [opposing the anti-SLAPP motion], by disputing the existence of an FBI criminal investigation . . . , were sufficient to meet that slight threshold, so as to enable [plaintiffs] to proceed on the defamation claim." (*GetFugu*, at p. 155, italics & fn. omitted.) In short, Gurzhiy's challenges to plaintiffs' evidence create triable issues of fact rather than demonstrating that plaintiffs submitted noncredible evidence.

We are not persuaded by Gurzhiy's suggestion that "[p]laintiffs easily could have submitted the annual accountings that they claim to make available on request." Gurzhiy offers no legal authority for the proposition that plaintiffs had to submit this, or any other, particular form of evidence to meet their burden to demonstrate falsity. Instead, the testimony of a single witness – even when the witness is a party – suffices to provide substantial evidence in support of a claim. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

In statements 33.u and 33.v, Gurzhiy accused missionaries with plaintiffs' charities of smuggling cash and getting arrested for the smuggling. As to statements 33.u and 33.v, Gurzhiy argues that Stephan responded with what "is perhaps the epitome of a negative pregnant," by which "Stephan alone denied the literal and precise statement as to himself and — to his knowledge — other missionaries he traveled with, while offering no denial at all of the substance of the statements." (Italics & boldface omitted.) Thus

28

Gurzhiy argues that Stephan's declaration is so carefully worded that it obscures the truth by telling only a part of the truth.

To assess Gurzhiy's argument, we recount Stephan's declaration. In pertinent part, Stephan declared: "Upon completion of each of my three missionary trips to Malawi, I did not hide stacks of cash under my clothes while leaving the country of Malawi. To my knowledge, no other missionaries I travelled with to Malawi, hide [*sic*] any money when leaving the country. Neither myself, nor any other member of the missionary group I travelled with to Malawi has ever been arrested or spent time in a local jail." Stephan's declaration is sufficient to meet plaintiffs' minimal burden to establish falsity. As founder of the charitable organization that Gurzhiy accuses of criminal self-dealing, Stephan established his familiarity with charitable operations. His blanket statement that he did not know of anyone smuggling cash or being arrested for smuggling was sufficient to meet the low threshold required to defeat the anti-SLAPP motion and proceed to trial on the defamation claim.

Gurzhiy argues that, with respect to statements 33.m and 33.bb, plaintiffs did not prove that they did not personally gain from selling humanitarian aid that was donated by others. Statement 33.bb further alleged that "no one has ever performed any audits or accounting checks." The response by plaintiffs to these statements was categorical denial of their truth. Anna, Roman, Stephan, Vitaliy, and Vladimir declared that they have never been involved in the sale of humanitarian aid. Roman further declared that "[n]one of the items sold in my stores are received directly or indirectly from Ukraine Relief or the Great Commission." Reading the declarations on this issue as a whole and in context, they indicated that if a trier of fact found them to be credible they could establish the falsity of Gurzhiy's statements about sale of aid intended to be given for humanitarian purposes. Regarding the accusation that there was never an accounting, Stephan explained that "Ukraine Relief's accounting is performed by Solomia Treschuk,

29

Accountant/Enrolled Agent on a regular basis." Stephan further explained that Ukraine Relief offered full accountings on request.

The next set of statements involve Gurzhiy's statements that portray the plaintiffs as indicted criminals and fugitives from crime. With respect to statement 33.jj, Gurzhiy argues that "Plaintiffs attempt to deflect by pointing to Vitaliy and Roman's statements denying the literal truth of the Article, but not its substance." We reject the idea that plaintiffs failed to meet their burden to defeat the anti-SLAPP motion by denying the literal truth because they somehow neglected to address a different underlying substance to Gurzhiy's statement. So too, with respect to statements 33.rr and 35.bb, we reject Gurzhiy's argument that the anti-SLAPP motion was erroneously denied because "Roman and Anna deny matters for which the substantial truth is established by the record . . . ."

An examination of the record shows that each of the Skots plaintiffs declared that they have not been charged with or convicted of any crime. They further declared that they had not been engaged in criminal activity. Moreover, Anna explained that the federal case to which Gurzhiy's articles refer was a civil forfeiture proceeding that was settled by the parties. The parties settled the case without any admission of guilt or criminal liability. Gurzhiy's view that his own evidence undermines Roman and Anna's denials sets the stage for a trial on competing evidentiary claims rather than entitling him to the summary-judgment-like procedure of an anti-SLAPP motion.

With respect to statements 33.ww, 33.yy, 35.a, 35.b, 35.f, 35.r, 35.s, and 35.x, Gurzhiy argues that "carefully-worded declarations do not discuss Gurzhiy's investigation, nor do they deny (1) that Gurzhiy visited and videotaped their stores; or (2) that the items discussed in the Articles came from their stores." (Italics & boldface omitted.) Gurzhiy's argument on this topic relates to the allegedly defamatory assertions that plaintiffs are "fugitive swindlers" who systematically stole humanitarian aid to sell it for their own profit in stores abroad. We are not persuaded by the argument.

The declarations to which Gurzhiy refers are those of Anna, Roman, Stephan, Vitaliy, and Vladimir. These members of the Skots extended family declared that they have never been involved in the sale of humanitarian aid. Roman further declared that "[n]one of the items sold in my stores are received directly or indirectly from Ukraine Relief or the Great Commission." Reading the declarations on this issue as a whole and in context, if a trier of fact found them to be credible they would establish the falsity of Gurzhiy's statements about sale of aid intended to be given for humanitarian aid. Consequently, the plaintiffs met their burden to defeat the anti-SLAPP motion as to statements 33.ww, 33.yy, 35.a, 35.b, 35.f, 35.r, 35.s, and 35.x.

## IV
### *Subjective Opinions*

Gurzhiy argues that the trial court erroneously determined statements 33.a, 33.c, 33.d, 33.i, 33.j, 33.k, 33.m, 33.o, 33.p, 33.q, 33.t, 33.x, 33.bb, 33.dd, 33.jj, 33.rr, 33.ww, 33.yy, 33.jjj, 35.a, 35.b, 35.f, 35.r, 35.s, 35.x, 35.y, 35.bb, and 35.ff to be statements for which their accuracy or falsity may be established. According to Gurzhiy, each of these is a subjective opinion incapable of being proven false. We conclude that statements 33.i, 33.j, 33.x, and 33.jjj are statements of subjective opinion not capable of being proven or disproven. The remainder of the challenged statements, however, are not statements of subjective opinion.

## A.
### *Statements Not Provably Accurate or False*

In evaluating Gurzhiy's argument that the trial court erred in holding subjective opinions to be actionable we remain mindful that falsity is a key element of a defamation claim. " 'Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected.' (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th

31

97, 112 (*McGarry*).) [¶] 'That does not mean that statements of opinion enjoy blanket protection. [Citation.] On the contrary, where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation. [Citation.] The critical question is not whether a statement is fact or opinion, but " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.' " ' " (*Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 862, quoting in part *Wong, supra*, 189 Cal.App.4th at p. 1370.)

In reviewing whether a statement represents " 'actionable fact or nonactionable opinion, courts use a totality of the circumstances test of whether the statement in question communicates or implies a provably false statement of fact. [Citation.] Under the totality of the circumstances test, "[f]irst, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense. . . . [¶] Next, the context in which the statement was made must be considered." ' (*McGarry, supra,* 154 Cal.App.4th at p. 113.) [¶] 'The "crucial question of whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court. [Citation.]" [Citation.] "Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood. [Citations.]" [Citation.] The question is " 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact. . . .' " ' " (*Sanders v. Walsh*, *supra*, 219 Cal.App.4th at pp. 862-863, quoting *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 696.)

**B.**
***Statements Asserted to Be Expressions of Subjective Opinion***

As to statements 33.i, 33.j, 33.x, and 33.jjj, we agree with Gurzhiy that the trial court erroneously refused to strike plaintiffs' claims relating to these subjective opinions. Statement 33.i lamented the "[d]isastrous and suspicious projects of the missionary

businessman Stephan Skots." Statement 33.j urged an examination of Stephan's "past and present 'Christian' projects, including some suspicious and totally disastrous ones." Statement 33.x focused on Stephan's project that was a "highly unfortunate affair in Mexico called International Ministries Salidad . . . ." Whether a project is disastrous, suspicious, or highly unfortunate can be determined only as a matter of opinion. There is no objective standard for measuring when an outcome might be disastrous, suspicious, or highly unfortunate. (See *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 117 [holding statement of opinion regarding whether an action was right or wrong is nonactionable because "[b]ehavior that might qualify as immoral to one person, although being perfectly acceptable to another person, demonstrates that an amorphous assertion of immoral behavior is within the range of statements of opinion that are not actionable"].) In essence, the adjectives and adjectival phrases in these statements by Gurzhiy are subjective opinions not capable of being proven or disproven.

Statement 33.jjj asked rhetorically whether plaintiffs were putting "the finishing touches to the picture of 'serving God and the Ukrainian people' " by meeting with crooked Ukrainian politicians, flying all over the world at the expense of credulous believers, giving pretentious interviews on TV and enjoying lavish dinners at restaurants. The question of whether someone or something is "crooked," "credulous," or "pretentious" is directed at subjective opinion. Statement 33.jjj asks the reader rhetorically about the value of the true purpose of plaintiffs' charitable efforts that invites an opinion rather than a factual conclusion. We conclude the trial court should have stricken statements 33.i, 33.j, 33.x, and 33.jjj by granting the anti-SLAPP motion as to these.

However, we affirm the trial court's denial of the anti-SLAPP motion to the remainder of the statements challenged by Gurzhiy on appeal as subjective opinion. We note that Gurzhiy presented the articles as investigative journalism that sought to uncover the true nature of plaintiffs' humanitarian activities. Gurzhiy did not preface any of the

allegedly defamatory statements as merely stating his opinion or the opinion of The Slavic Sacramento. Instead, the articles detailed many facts that Gurzhiy represented to be the product of his own research and even his personal in-the-field observations. "A court distinguishing between statements of fact and protected statements of opinion must consider the effect of cautionary language in an allegedly defamatory communication. 'Where the language . . . is "cautiously phrased in terms of apparency" the statement is less likely to be reasonably understood as a statement of fact rather than opinion.' " (*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1314, quoting *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260-261.) Gurzhiy portrayed his observations during his travel to Ukraine as facts. Based on these and other alleged facts, Gurzhiy clearly and repeatedly accused the plaintiffs of committing crimes, enriching themselves at the expense of duped charitable contributors, and being fugitives from justice. Whether plaintiffs engaged in the specific acts alleged by Gurzhiy are facts amenable to proof or disproof.

If plaintiffs have credible evidence on point, they can prove that USKO Shipping employees were not caught with hundreds of thousands of dollars in unaccounted money (statement 33.a), that their charities were effective in delivering aid without wasting millions of dollars of donated money (statements 33.c, 33.o, 33.p, 33.t, & 33.dd), they produced accountings showing how donations were properly received and properly spent by their charities (statements 33.d, 33.bb, 33.jj, 33.yy, & 35.f), none of the donated items were sold for profit in their stores in Ukraine (statements 33.k, 33.ww, 35.r, 35.s, & 35.x), they did not charge $6,500 for every container of humanitarian aid shipped abroad (statement 33.m), they actually constructed water wells in Malawi (statement 33.q), that an arrest warrant never issued for Anna and Roman and that they never fled from threatened criminal indictment (statements 33.rr & 35.bb), that Roman never engaged in forgery, blackmail, or bribery of public officials (statement 35.a), that churches in the United States and Ukraine were not integral to plaintiffs' misappropriation of

34

humanitarian aid (statement 35.b), that Roman has not engaged in a course of conduct of stealing from and intimidating Christians (statement 35.y), and that Roman never engaged in arson of houses to build a church (statement 35.ff). In concluding that these statements are susceptible to being proven or disproven, we do not express any opinion on whether the evidence offered in opposition to the anti-SLAPP motion would be persuasive at trial. Instead, we conclude only that these statements sufficiently show facts for which it is possible to introduce proof of falsity. Based on this conclusion, the trial court properly ruled that these were not mere statements of opinion and thus not the proper subjects of Gurzhiy's anti-SLAPP motion to strike these statements.

Gurzhiy's main ground for accusing plaintiffs of engaging in a systematic course of crime was his repeated assertion that plaintiffs stole humanitarian aid for themselves (see e.g., statements 35.b., 35.f., 35.r., & 35.s). Gurzhiy's accusations of theft are not subjective opinion. Plaintiffs either committed the alleged crimes or they did not. Whether the crime of theft is capable of proof or disproof is not a subjective and nonactionable opinion.

# V
## *Fair Reporting Privilege*

Gurzhiy argues that the trial court erred in rejecting the defense that the following statements are protected as fair and true reports of public proceedings: statements 33.a, 33.jj, 35.a, 35.b, 35.y, 35.bb, and 35.ff. We are not persuaded.

## A.
### *Other Proceedings*

Gurzhiy argues that statements 33.a, 33.jj, 35.a, 35.b, and 35.bb related to federal forfeiture proceedings involving plaintiffs.

Gurzhiy next argues that statements 35.a, 35.b, 35.y, and 35.ff "reported on official records from Ukraine detailing the accusations made against Roman . . . ."

35

**B.**
*Analysis*

Section 47, subdivision (d), provides that privileged publications include statements made "[b]y a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued." (§ 47, subd. (d)(1).) This fair report privilege applies to "reports and communications '*of* . . . a judicial . . . proceeding, or . . . *of* anything said in the course thereof.' (§ 47, subd. (d)(1), italics added.) That is, the statements are privileged if they are fair and true reports *about the proceedings* or of what was *said in the proceedings*." (*Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 435 (*Healthsmart*).)

*Healthsmart* involved an action by hospital operators against attorneys who filed a medical malpractice lawsuit and made statements on television and radio programs about an alleged conspiracy to install defective surgical hardware in thousands of patients. (*Healthsmart, supra,* 7 Cal.App.5th at pp. 420-421.) The attorneys tendered the defense that their comments were fair reports on pending litigation. (*Id.* at p. 431.) The attorneys filed an anti-SLAPP motion based on this defense, which the trial court granted. (*Id.* at p. 426.) On appeal, the *Healthsmart* court noted that the applicability of the privilege of section 47 depended on "whether the average viewer or listener of the media reports would understand the attorneys' statements as communications about the [medical malpractice] complaint (which would be privileged) or as facts (which would not)." (*Healthsmart,* at pp. 435-436.)

As one California court has noted, "It is undenied that a media defendant does not have to justify every word of the alleged defamatory material that is published. (*Kurata v. Los Angeles News Pub. Co.* (1935) 4 Cal.App.2d 224, 227-228.) The media's responsibility lies in ensuring that the 'gist or sting' of the report—its very substance—is

36

accurately conveyed. (*Hayward v. Watsonville Register-Pajaronian & Sun* (1968) 265 Cal.App.2d 255, 262.) Moreover, this responsibility carries with it a certain amount of literary license. The reporter is not bound by the straitjacket of the testifier's exact words; a degree of flexibility is tolerated in deciding what is a 'fair report.' " (*McClatchy Newspapers, Inc. v. Superior Court* (1987) 189 Cal.App.3d 961, 975-976.) "In general, whether a privileged occasion exists within the meaning of Civil Code section 47, subdivision (d), is for the court to decide; whether the report of the official proceedings itself is 'fair and true,' provided reasonable minds could disagree as to the effect of the communication on the average reader or listener, is a question of fact for the jury." (*J-M Manufacturing Co., Inc. v. Phillips & Cohen* LLP (2016) 247 Cal.App.4th 87, 98.)

## C.
### *Statements 33.a, 33.jj, 35.a, 35.b, 35.y, 35.bb, and 35.ff*

With respect to statements 33.a, 33.jj, 35.a, 35.b, 35.y, 35.bb, and 35.ff, the trial court did not err in denying the anti-SLAPP motion on grounds of the fair reporting privilege. Statement 33.a is part of Gurzhiy's article synopsis that presents the statement about UKSO Shipping employees getting caught with unaccounted money as a fact. The statement does not indicate that it recites statements made in connection with litigation. Instead, the statement appears to convey the conclusion reached by Gurzhiy's investigation. Statement 33.jj states a fact about USKO Shipping's annual income made "[a]ccording to information from open sources," without making clear what those sources may have been. Sources mentioned in the article include statements made by Anna, IRS records, Web sites, other unidentified sources, Great Commission's official bulletin, Facebook posts, statements made on Ukrainian television, a logistics company, a federal lawsuit, and accounting records. Statement 33.jj's juxtaposition of its assertion with information gleaned from the federal legal action indicates that this statement was not a report of a judicial or public proceeding.

37

Statement 35.a asserts that Roman "escaped justice in the U.S." only to commit numerous crimes in Ukraine. In context of the article, the statement does not appear to be connected with any public proceeding but instead appears to be the factual assertion of the author. Likewise, statement 35.b appears to be a factual statement of the author in alleging a "cover[] up" by American churches connected with Roman. There is no assertion that the evidence of the cover up was sourced from any judicial or public proceeding.

Statements 35.y, 35.bb, and 35.ff assert that Roman engaged in a pattern of intimidation, money laundering, and arson. These allegations of criminal behavior appear to rest on Gurzhiy's travels and his own interviews, not on any public or judicial proceeding. The trial court correctly determined that the fair reporting privilege does not apply and declined to strike these statements.

# VI
## *Nondefamatory Statements*

Gurzhiy argues that statements 33.c, 33.d, 33.x, and 33.jj are not defamatory because they did not injure the plaintiffs' reputations. He reasons that "any questions the Articles may have raised regarding the fundraising and spending of the charities, and regarding USKO Shipping's income while its principals were being criminally investigated — when viewed in context with the remainder of the Articles, which Plaintiffs have failed to prove false — do not relay a defamatory message." In his reply, Gurzhiy asserts that plaintiffs have failed to address particular statements and have therefore conceded the points. Regardless of whether respondents have addressed a particular issue, we nonetheless "examine the record on the basis of appellant's brief and . . . reverse only if prejudicial error is found." (*Walker v. Porter* (1974) 44 Cal.App.3d

38

174, 177.)  Having examined the argument, we determine that we are not persuaded as to statements 33.c, 33.d, and 33.jj.[11]

## A.
### *Injury to Reputation*

Section 45 defines an actionable defamatory statement as "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  Sometimes defamatory statements may be amenable to a nondefamatory interpretation.  Consequently, " '[t]he test is whether a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts.  If it does, "whether the charge be directly made or merely implied, the publication—without averment, colloquium, or innuendo—will, in itself, constitute a libel." ' (*MacLeod v. Tribune Publishing Co.* [(1959)] 52 Cal.2d 536, 549.) Perhaps the clearest example of libel per se is an accusation of crime." (*Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377, 384-385.)

In assessing whether a statement has a defamatory import, we do not take individual words in isolation or parse sentences in a hypertechnical dissection. (*Bartholomew v. YouTube, LLC.* (2017) 17 Cal.App.5th 1217, 1227-1228.)  " ' " '[I]n passing upon the sufficiency of such language as stating a cause of action, a court is to place itself in the situation of the hearer or reader, and determine the sense or meaning of the language of the complaint for libelous publication according to its natural and popular construction.'  That is to say, the publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader.  A defendant is liable for what is insinuated, as well as for what is stated explicitly." ' " (*Bartholomew v. YouTube, LLC*.

---

[11] We concluded that statement 33.x is nonactionable in part IV, above.

(2017) 17 Cal.App.5th 1217, 1227, quoting *MacLeod v. Tribune Pub. Co.* (1959) 52 Cal.2d 536, 547.)

## B.
### *Statements with Potentially Defamatory Meaning*

Giving statements 33.c, 33.d, and 33.jj a natural and popular construction – especially in the context of the articles within which they were made – we conclude that these statements have defamatory meaning if the statements are false. Statement 33.c asserts that plaintiffs' charitable activities "wasted and lost" millions of dollars of donated money. In addition to wasting or losing the money, statement 33.d informs readers that plaintiffs did not bother to ever account for donated funds received or how those funds were spent. Statement 33.jj asserts that plaintiffs' shipping company seems to have received an annual income that was only a fraction of the "criminal case" against Roman. All three statements were made in the context of an article that branded Roman and Anna as criminals and fugitives. Plaintiffs were described as a "religious mafia" who engaged in crime and repeatedly wasted millions of dollars in charitable aid. In the context of the article, these three statements disparaged plaintiffs if the statements are proven untrue. Moreover, the purpose of the article included Gurzhiy's urging of donors to plaintiffs' charities to ask about the "stolen" donations. To the average reader, statements 33.c, 33.d, and 33.jj cast doubt on the plaintiffs' character and their purported charitable efforts. These statements are therefore defamatory if the statements are proven to be false.

## VII
### *"Of and Concerning" Plaintiffs*

Gurzhiy argues statement 33.u. and 33.v. are not " 'of and concerning' " any of the plaintiffs. He reasons that these statements related only to "unnamed 'missionaries' " and "do not refer to any particular Plaintiff." We disagree.

40

That statements 33.u and 33.v do not name specified individuals who were arrested from smuggling cash does not necessarily mean that the statements are not of and concerning any of the plaintiffs in this case. "There is no requirement that the person defamed be mentioned by name. (*Washer v. Bank of America* [(1943)] 21 Cal.2d 822.) It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff. (*Brayton v. Crowell-Collier Pub. Co*. [(2d Cir. 1953)] 205 F.2d 644.) It is sufficient if the publication points to the plaintiff by description or circumstance tending to identify him." (*DiGiorgio Fruit Corp. v. AFL-CIO*(1963) 215 Cal.App.2d 560, 569-570.) Thus, we examine the statements in context.

The statements regarding unnamed missionaries smuggling cash and getting arrested for their illicit activity falls in the middle of Gurzhiy's discussion of how Stephan oversaw Great Commission and did so in a manner that was reprehensible. Gurzhiy addressed Great Commission donors and exhorted them to examine where Great Commission stole $1.5 million in Malawi. Great Commission was supposed to build 50 water wells, but "witnesses have said that the missionaries who left the country hid stacks of cash under their clothes. Two of them were even arrested by the local authorities for trying to smuggle out a large amount of money and had to spend some time in a local jail." To conclude this section, Gurzhiy lamented: "All that's left is many disappointed donors and unanswered questions of the organizer of the Great Commission." As the article earlier noted, Stephan was the one to work on the Great Commission. And, it was Stephan to whom Gurzhiy pointed the blame for thefts in connection with Great Commission. In context, the trial court did not err in determining that statements 33.u and 33.v were of and concerning Stephan and Great Commission.

## VIII
### *Evidentiary Objections*

Gurzhiy argues that the trial court abused its discretion in overruling evidentiary objections made on grounds that plaintiffs opposed the anti-SLAPP motion with evidence

41

that was vague and conclusory, based on speculation and lacked foundation, relied on hearsay, was not best evidence, and/or lacked authentication.  Careful examination of Gurzhiy's opening brief shows that his arguments assert error, but without attempting to show prejudice for any of the evidentiary rulings made by the trial court.  However, to secure a reversal based on an evidentiary argument on appeal, an appellant must demonstrate prejudice that amounts to a miscarriage of justice.  (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; Cal. Const., art. VI, § 13.)  Gurzhiy has not done so.

## DISPOSITION

The trial court's order, granting in part and denying in part, the anti-SLAPP motion is reversed insofar as the court denied the motion as to statements 33.i, 33.j, 33.x, and 33.jjj.  On remand, the trial court shall strike statements 33.i, 33.j, 33.x, and 33.jjj as nonactionable as defamatory statements under Code of Civil Procedure section 425.16.  As to the remainder of the trial court's order on the anti-SLAPP motion, it is affirmed.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (5).)


                                     /s/
                                       HOCH, J.


We concur:


  /s/
DUARTE, Acting P. J.


  /s/
KRAUSE, J.